Exhibit B

STATE OF NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
BEFORE THE CLERK
15-E-1997

FILED

2015 FEB -4 P 4: 34

In the Matter of the Estate of

RALPH L. FALLS, JR.

Deceased.

)
)
)
)
)
)
)

REJECTION OF CREDITOR'S CLAIM,
COMPLAINT FOR DECLARATORY
JUDGMENT, AND
MOTION TO TRANSFER TO SUPERIOR
COURT DIVISION

NOW COMES Goldman Sachs Trust Company, N.A. ("Goldman Sachs" or "Executor") as the Executor of the Estate of Ralph L. Falls, Jr. ("Estate" and "Mr. Falls"), rejecting the claim filed by Ralph L. Falls, III ("Ralph Falls III") and seeking further relief as follows:

## REJECTION OF CREDITOR'S CLAIM

1.      Ralph Falls III filed a claim against the Estate on September 10, 2015 ("the Claim"). The Claim seeks $255,000.00 for rent allegedly owed by Mr. Falls as tenant pursuant to a purported lease in favor of Ralph Falls III as landlord.

2.      Executor hereby notifies Ralph Falls III that the Claim is unequivocally rejected. The grounds for the rejection include but are not limited to the following:

      a.      the purported lease is unenforceable;

      b.      the purported lease was merely an agreement to agree regarding rent; whereas, no monthly rental was ever set in advance of any term by written agreement or by an arbitrator;

      c.      the purported lease is unenforceable based upon the Statute of Frauds;

      d.      at pertinent times Ralph Falls III did not own the property purported to have been leased by Ralph Falls III to Mr. Falls;

      e.      the claim is barred by the equitable doctrine of laches;

f.     the claim is barred by the applicable statute of limitations;

g.     the claim is barred by waiver;

h.     the claim is barred by Ralph Falls III's failure to make written demand for payment of any rent during Mr. Falls' lifetime, and Ralph Falls III's waiver of the same;

i.     the parties' waiver of the expiration of the Qualified Personal Residence Trust and continued conduct as if the Qualified Personal Residence Trust remained in effect;

j.     the parties' intent that no rent would be paid during Mr. Falls' lifetime;

k.     surrender of the purported lease by the Estate and acceptance thereof by Mr. Falls III;

l.     failure to mitigate damages; and

m.     the absence of any valid calculation or support for the claim of $255,000.

## COMPLAINT FOR DECLARATORY JUDGMENT

Seeking further relief from this Court, Executor alleges as follows:

## PARTIES

1.     Mr. Falls passed away on May 11, 2015.

2.     Mr. Falls was a citizen and resident of Wake County through and including the date of his death.

3.     On June 8, 2015, Mr. Falls' Last Will and Testament, dated July 17, 2014, was admitted to probate by the Wake County Clerk of Superior Court.

4.     Mr. Falls' Last Will and Testament names Goldman Sachs as Executor of the Estate.

2

5. Goldman Sachs is the duly qualified Executor of Mr. Falls' Estate, having applied for and been issued Letters Testamentary on June 8, 2015, by the Wake County Clerk of Superior Court.

6. The Estate is an open estate in Wake County.

7. Ralph Falls III is a citizen and resident of New Jersey.

8. Ralph Falls III is a party to a purported lease of real property in Morehead City, Carteret County, North Carolina.

## JURISDICTION AND VENUE

9. A justiciable controversy regarding the construction and validity of a written document exists between the Executor and Ralph Falls III. Thus, the Court has subject matter jurisdiction under the Declaratory Judgment Act, N.C. Gen. Stat. § 1-253 *et seq.*, and N.C. Gen. Stat. § 28A-2-4.

10. This Court has personal jurisdiction over the parties under N.C. Gen. Stat. § 1-75.4.

11. Venue is proper in Wake County under N.C. Gen. Stat. §§ 1-82, 28A-2-4, and 28A-2-6.

## FACTS

12. Prior to August 30, 2002, Mr. Falls owned the property and residence located at 2507 Evans Street, Morehead City, North Carolina ("the Evans Street Residence") in fee simple.

13. On August 30, 2002, Mr. Falls transferred the Evans Street Residence to a Qualified Personal Residence Trust ("QPRT"), for which he was the Trustee. A true and accurate copy of the QPRT instrument is attached hereto as **Exhibit 1**.

14. The QPRT stated as follows, "The Trustee shall permit me, rent free, to use and occupy the [Evans Street] Residence (or any replacement residence) as my personal residence."

15. The QPRT, by its terms, was to terminate upon the earlier of ten years after its execution or Mr. Falls' death. If the QPRT terminated at the end of ten years, then the Evans Street Residence was to be distributed to Ralph Falls III, if he was living.

16. The QPRT named Ralph Falls III as a successor trustee to Mr. Falls.

17. Mr. Falls and Ralph Falls III executed a document titled as a lease pertaining to the Evans Street Residence ("the Lease Document") on December 5, 2005. A true and accurate copy of the Lease Document is attached hereto as **Exhibit 2**.

18. According to the Lease Document, "Landlord [Ralph Falls III] hereby agrees that *upon acquiring the real property* from the Falls QPRT on August 30, 2012, Landlord desires to lease said property to Tenant [Mr. Falls], and Tenant hereby agrees to lease said property from Landlord [Ralph Falls III], according to the following terms and conditions set out herein." (emphasis added)

19. The Lease Document further stated, "The term of this Lease shall be for one (1) year, commencing on August 30th, 2012, and ending on August 29, 2013."

20. Regarding renewals, the Lease Document contains a section titled, **"OPTION TO RENEW."** This section states, "Unless Tenant affirmatively elects in writing not to renew, this Lease shall automatically renew for fifteen (15) additional periods of one (1) year each. The renewal each year shall occur automatically unless the Tenant notifies the Landlord in writing at least thirty (30) days prior to the end of the existing lease term that he does not intend to renew."

4

21. No amount for rent is stated in the Lease Document. Rather, the Lease Document stated that the rent would be "a monthly sum mutually agreed between the Landlord and Tenant as a fair market rental value."

22. The Lease Document further states, "If the parties cannot mutually agree on a fair market value rental, the rental shall be determined by a qualified appraiser, either agreed on by both parties; or if the parties cannot agree, to be appointed by the law firm of Baddour, Parker, Hine & Orander, P.C. or its successor, and such appraisal shall be binding on all parties."

23. Mr. Falls and Ralph Falls III did not mutually agree on a fair market rental value for the Evans Street Residence prior to the death of Mr. Falls.

24. Mr. Falls and Ralph Falls III were not unable to agree on a fair market rental value for the Evans Street Residence.

25. No appraisal was requested, demanded, required or conducted in advance of or during any one-year lease term.

26. While the Lease Document stated that rent is to be paid on or before the first day of each calendar month, no rent was ever paid by Mr. Falls during his lifetime.

27. The Estate has not paid any rent following Mr. Falls' death.

28. Ralph Falls III made no written demand of Mr. Falls to pay any rent during Mr. Falls' lifetime.

29. Ralph Falls III sent no written notice of default to Mr. Falls relating to the purported lease during Mr. Falls' lifetime.

30. Ralph Falls III made no written demand of Mr. Falls to transfer title to the Evans Street Residence from the QPRT to Ralph Falls, III after expiration of the ten year term of the QPRT.

31.     Following Mr. Falls' death on May 11, 2015, Ralph Falls III, as Successor Trustee of the QPRT, transferred title to the Evans Street Residence to himself in fee simple by Special Warranty Deed executed on June 26, 2015, and filed with the Carteret County Register of Deeds on July 1, 2015. A true and accurate copy of the deed is attached hereto as **Exhibit 3**.

32.     After deeding the property to himself, Ralph Falls III demanded on or about August 2015 that Goldman Sachs as Executor of the Estate of Mr. Falls remove boats that Mr. Falls had kept at the Evans Street Residence. Goldman Sachs removed the boats in accordance with the demand of Ralph Falls III on or about October 19, 2015.

33.     On or about July 22-23, 2015, Executor made an inventory of the personal property and furniture of Mr. Falls located in the Evans Street Residence. The Executor was only permitted by Ralph Falls III to enter the Evans Street Residence for purposes of the requested inventory after agreeing to pay for a paralegal employed by Ralph Falls III's counsel to attend the entire process.

34.     By November 30, 2015, with approval of Ralph Falls III, Executor removed all of Mr. Falls' personal belongings and furniture from the Evans Street Residence.

35.     Executor no longer has access to the Evans Street Residence. The Estate has vacated the premises and has notified counsel for Ralph Falls III that the lease was terminated effective November 30, 2015. The Estate has no need or use for the Evans Street Residence, which was used by Mr. Falls during his lifetime for his personal enjoyment as a second home near the beach. The Estate through undersigned counsel has advised counsel for Ralph Falls III that as owner of the Residence he should rent or sell the Residence in order to mitigate his alleged damages, which to date Ralph Falls III has not done.

36. Executor's counsel has corresponded with Ralph Falls III's counsel regarding transfer of the utilities and insurance into the name of Ralph Falls III. Despite conducting himself as a fee simple owner and not a landlord, Ralph Falls III has refused such a transfer.

37. Based on correspondence between Executor's counsel and Ralph Falls III's counsel, Ralph Falls III claims the Estate owes rent for the Evans Street Residence from August 30, 2012, through August 30, 2028, representing a term that includes all possible renewal periods allowed tenant under the Lease Document, should the tenant exercise its option to renew and not provide written notice of termination of the lease. Thus, as interpreted by Ralph Falls III, the Lease Document would require the Estate to renew the lease for fifteen (15) additional one-year terms, regardless of the best interests of the Estate and its beneficiaries, ignoring the "option" for tenant to renew (or not), and heedless of the written notification of termination of lease by the tenant. Executor contends that it has not exercised its option to renew for a term beyond 2015, and Executor has provided written notice of termination of the lease, so that the lease is terminated and cannot continue through 2028 as Ralph Falls III apparently contends.

38. For avoidance of doubt, if the lease was deemed to continue despite the death of Mr. Falls and the actions of Ralph Falls III in not permitting the Estate access to the residence without paying for a representative, and despite the Estate's prior notices of termination and non-renewal of lease, the Estate hereby further declares that it has terminated the lease, and will not exercise any further option to renew or extend the lease for additional terms.

39. Executor disagrees with and disputes Ralph Falls III's interpretation of the Lease Document and written documents regarding the Evans Street Residence and, thus, seeks a declaration of the parties' respective rights and obligations from this Court.

## COUNT I – DECLARATORY JUDGMENT

40.     Executor incorporates by reference as if fully set forth below the foregoing Paragraphs.

41.     Ralph Falls III asserts that the Lease Document requires renewal for all possible renewal terms through August 30, 2028 and that the Estate is liable for payment of rental to Ralph Falls III from August 30, 2012, through August 30, 2028 at a monthly rental rate to be set by an appointed appraiser. The Estate disputes and disagrees with this interpretation of the Lease Document.

42.     Executor asserts that the Lease Document is merely an agreement to agree regarding fair market rental value and is invalid.

43.     Executor asserts that the Lease Document fails to state an essential term of the amount of rent to be paid and is invalid under the Statute of Frauds.

44.     Executor asserts, if the Lease Document is valid, that rent owed would only accrue from June 26, 2015 through date of termination, as, per the plain language of the Lease Document, Ralph Falls III did not acquire the property until June 26, 2015, and the Estate has given notice of termination and non-renewal under the "option" clause.

45.     Executor further asserts, if the Lease Document is valid, that the Estate is not required to renew for any additional terms based on the plain language of the Lease Document. Rather, the Estate has an "option" not to renew and can terminate the lease and prevent its renewal for any additional term or terms by giving written notice of termination. Under Ralph Falls III's interpretation of the Lease Document, the Estate could not be closed until August 30, 2028, which would harm the Estate and prevent or delay winding up of the decedent's Estate to the detriment of its beneficiaries. Further, under Ralph Falls III's interpretation of the Lease

Document, the Estate could not terminate the lease by choosing not to exercise its option to renew and by providing written notification of termination of the lease, which the Estate asserts cannot be so under law or in equity.

46.     A real, justiciable controversy exists between Ralph Falls III and Executor regarding the interpretation and enforcement of the Lease Document.

47.     Pursuant to N.C. Gen. Stat. § 1-253 *et seq.*, Executor seeks a declaration of all or one or more of the following: a) the Lease Document is invalid or unenforceable, contrary to the contention by Ralph Falls III, b) the Estate is not obligated to make any payment to Ralph Falls III for past or future rentals claimed as owing, c), in the alternative, any obligation of the Estate to pay rent accrued only on June 26, 2015, d) the lease has been terminated, (e) the Estate is not obligated to renew for any additional lease terms and has exercised its option to terminate the lease, and f) Ralph Falls III's interpretation of the Lease Document is not supported by the facts and applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Executor respectfully prays unto this Court as follows with respect to the Complaint for Declaratory Judgment:

1.     That the Court enter a declaration of all or one or more of the following: a) the Lease Document is invalid or unenforceable, contrary to the contention by Ralph Falls III, b) the Estate is not obligated to make any payment to Ralph Falls III for past or future rentals claimed as owing, c), in the alternative, any obligation of the Estate to pay rent accrued only on June 26, 2015, d) the lease has been terminated, e) the Estate is not obligated to renew for any additional lease terms and has exercised its option to terminate the lease, and f) Ralph Falls III's interpretation of the Lease Document is not supported by the facts and applicable law.

2. That Ralph Falls III have and recover nothing from the Estate;

3. That the Court award the Estate its costs and reasonable attorneys' fees as permitted by law, including but not limited to N.C. Gen. Stat. § 1-263; and

4. Such other and further relief as may be just and proper.

## MOTION TO TRANSFER TO SUPERIOR COURT

Executor further moves the Court as follows:

1. Executor has requested relief under the Declaratory Judgments Act.

2. Pursuant to N.C. Gen. Stat. § 28A-2-4(b), either party in an estate proceeding, upon the filing of an action for declaratory relief, may move to transfer the proceeding to the Superior Court Division of the General Court of Justice.

3. Pursuant to N.C. Gen. Stat. § 28A-2-6(h), transfer to the Superior Court Division is mandatory when such a motion is filed and served by a party.

4. Executor hereby moves to transfer this proceeding to the Superior Court Division for Wake County and that the Wake County Superior Court Clerk assign a Superior Court file number to this matter.

5. Executor is filing this pleading and will serve a copy on Ralph Falls III's counsel, as stated in the Certificate of Service attached hereto.

6. Attached as **Exhibit 4** is Executor's proposed order granting the Motion to Transfer to Superior Court.

WHEREFORE, Executor moves the Court and prays as follows regarding the Motion to Transfer:

1.    That the Court transfer the proceedings regarding the subject matter of this filing to the Superior Court Division where the parties may litigate the Claim of Ralph Falls III, Executor's defenses thereto, and the declaratory relief sought by Executor;

2.    That the Court award the Estate its costs and reasonable attorneys' fees as permitted by law; and

3.    Such other and further relief as may be just and proper.

This the _4_ of February, 2016.

SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P.

By: _James K. Dorsett_

James K. Dorsett, III
NCSB No. 7695
jdorsett@smithlaw.com
J. Mitchell Armbruster
NCSB No. 26422
marmbruster@smithlaw.com
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-1220
Facsimile:  (919) 821-6800

*Attorneys for Executor Goldman Sachs Trust Company, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing document to the following counsel of record in this case via U.S. Mail:

Lynn F. Chandler
Jonathan P. Heyl
Timothy P. Lendino
Eric Snider
Smith Moore Leatherwood LLP
101 North Tryon Street, Suite 1300
Charlotte, NC 28246
*Attorneys for Ralph L. Falls, III*

This the 4 day of February, 2016,

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.

By: _Nancy K Dorsett_

James K. Dorsett, III
NCSB No. 7695
jdorsett@smithlaw.com
J. Mitchell Armbruster
NCSB No. 26422
marmbruster@smithlaw.com
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-1220
Facsimile: (919) 821-6800

*Attorneys for Executor Goldman Sachs Trust Company, N.A.*

FILED

2016 FEB -4 P 4 34

STATE OF NORTH CAROLINA

COUNTY OF CARTERET

QUALIFIED PERSONAL
RESIDENCE TRUST AGREEMENT

THIS IRREVOCABLE TRUST AGREEMENT is entered into on this 30th day of August, 2002, by and between RALPH L. FALLS, JR., ("Grantor"), and RALPH L. FALLS, JR., as Trustee ("Trustee");

## ARTICLE I

## TRUST PROPERTY

A. <u>Original Trust Property</u>.  I have conveyed to the Trustee my personal residence ("Residence") described as 2507 Evans Street, Morehead City, Carteret County, North Carolina, which is described more fully in Exhibit A attached hereto.

B. <u>Mortgage</u>.  The Residence is not subject to any deed of trust.

C. <u>No Additions to Trust Property</u>.  No additional contributions shall be made to the Qualified Personal Residence Trust after the initial contribution except for those contributions specifically permitted in this instrument.

## ARTICLE II

## IRREVOCABILITY

This trust is irrevocable, and I acknowledge that I have been advised by counsel that I have no right or power, whether alone or in conjunction with others, in whatever capacity, (i) to amend or revoke the trust or any of the terms of this instrument, in whole or in part, or (ii) to designate the persons who shall possess or enjoy the trust property or the income from it.

The Trustee, however, shall have the power, acting alone, to amend the trust in any manner required for the sole purpose of ensuring that the Qualified Personal Residence Trust

EXHIBIT

1

qualifies and continues to qualify as a qualified personal residence trust within the meaning of Section 2702(a)(3)(A)(ii) of the Code and Treasury regulation Section 25.2702-5.

## ARTICLE III

## TERM OF TRUST

The term ("Trust Term") of this trust shall be from the date of this instrument until the earlier of (i) ten years thereafter, or (ii) the date of my death.

## ARTICLE IV

## DISPOSITION OF TRUST PROPERTY

## UNTIL TERMINATION OF TRUST

During the Trust Term, the Trustee shall hold and administer the trust estate as follows:

1. <u>Use of Residence.</u> The Trustee shall permit me, rent free, to use and occupy the Residence (or any replacement residence) as my personal residence. This trust shall not hold more than one residence. I will be solely responsible for all repairs and maintenance, ad valorem property taxes, and payment of casualty insurance premiums.

2. <u>All income paid to Grantor.</u> The Trustee shall pay the net income of the trust, if any, me at least quarterly.

3. <u>Additions of Cash.</u> Additions of cash may be made which the Trustee shall hold in a separate account. These amounts may not exceed the amount reasonably required: (i) for payment of trust expenses and mortgage payments, (ii) improvements to the Residence, and (iii) purchase of a replacement residence. The Trustee shall immediately distribute all funds held in excess of the amounts so needed.

4. <u>Improvements.</u> Improvements to the Residence may be made if the Residence

2

continues to meet the requirements of a personal residence within the meaning of Section 2702 of the Code and the applicable Treasury regulations.

5. _Sale of Residence._ If the Residence is sold, the proceeds shall be held in a separate account. The Residence may not be sold to the Grantor, the Grantor's spouse, or an entity controlled by them.

6. _Insurance._ All casualty insurance policies shall be owned by, and payable to, the trust. The Trustee shall hold, in a separate account, (i) the proceeds of any casualty insurance and (ii) the proceeds of any involuntary conversion.

## ARTICLE V

## CESSATION OF QUALIFIED PERSONAL RESIDENCE TRUST

1. _Cessation of Qualification._ If this trust ceases to qualify under the Internal Revenue Code as a qualified personal residence trust, the Trustee shall immediately hold such non-qualifying assets in a separate share of the trust and Grantor's interest in such assets shall be converted to a Qualified Annuity Interest. The trust ceases to be a qualified personal residence trust whenever the Residence ceases to be used by me as a personal residence. If the Residence is damaged or destroyed so as to render it unusable as a residence, the trust shall have a period of two years to repair or replace the Residence to continue qualification.

2. _Conversion to Qualified Annuity Interest._ With respect to any assets that have been converted to a Qualified Annuity Interest, the Trustee is directed as follows:

a. In each taxable year of the trust the Trustee shall pay to me the Annuity Amount.

b. My right to receive the Annuity Amount shall begin on the "Cessation Date" and shall end on the Trust Term. "Cessation Date" means the date of sale of the Residence, the date of damage to or destruction of the Residence, or the

3

date on which the Residence ceases to be used or held for use as my personal Residence, as the case may be.

c.    The Annuity Amount shall be paid annually from income and, to the extent that income is not sufficient, from principal.

d.    Any income for a taxable year in excess of the Annuity Amount shall be paid to me.

e.    The annuity amount ("Annuity Amount") shall be determined as follows:

(1)    If, on the conversion date, the trust assets being held do not include a personal residence for me, the Annuity Amount shall be an amount determined by dividing the lesser of (i) the value of all Grantor's retained interests (as of the date of the original transfer) or (ii) the value of all the trust assets (as of the conversion date) by an annuity factor determined for the original term of Grantor's interest and using the rate determined under Section 7520 of the Code as of the date of transfer of the original trust property.

(2)    If, on the conversion date, the trust assets include a personal residence for the Grantor, the Annuity Amount shall be the amount determined under subparagraph (1) above multiplied by a fraction. The numerator of the fraction shall be the excess of the fair market value of the trust assets on the conversion date over the amount (including acquisition costs) reinvested in the new residence or expended for repairs of the existing residence,

4

and the denominator of the fraction shall be the fair market value of the trust assets on the conversion date.

g.  If the Annuity Amount is incorrectly determined, then within a reasonable period after the value is finally determined for federal tax purposes, the Trustee shall distribute to Grantor (in the case of undervaluation) or Grantor shall pay to the Trustee (in the case of overvaluation) an amount equal to the difference between the Annuity Amount properly payable an the amount actually paid.  If the Trustee reports for the taxable year pursuant to Regulations Section 1.671-4(b), the Annuity Amount must be paid no later than the date by which the Trustee would have been required to file the federal income tax return of the trust for the taxable year (without regard to extensions) had the Trustee reported pursuant to Regulations Section 1.671-4(a).  The Trustee is prohibited from issuing a note, other debt instrument, obligation or similar financial arrangement, directly or indirectly, in satisfaction of the Annuity Amount.

h.  In determining the Annuity Amount, the Trustee shall prorate the same on a daily basis for a short taxable year and for the taxable year ending on the date the trust terminates.

## ARTICLE VI

### DISPOSITION OF TRUST PROPERTY
### AFTER TERMINATION OF TRUST

This trust shall terminate upon the earlier of (i) the date that is ten years from the date of this trust instrument or (ii) the date of my death.  Upon termination of the trust:

1.  The Trustee shall distribute to Grantor or to Grantor's estate,

a.  Any undistributed income of the trust due Grantor, and

5

b. Within thirty (30) days of termination of the trust, (i) any Annuity Amounts due Grantor and (ii) any amounts held by the trust in the separate accounts that are not used to pay trust expenses due and payable on the date of termination of the trust.

2. The balance of the trust property shall be disposed of as follows:

a. If the trust terminates because of the expiration of the ten year term, such balance shall be distributed to the Grantor's son, Ralph L. Falls, III, if then living; or if he is not then living, to Grantor's daughter, Louise Falls Cone, if then living; or if not then living to the then living descendants of Ralph L. Falls, III and Louise Falls Cone, per capita.

b. If the trust terminates because of Grantor's death, such balance shall be distributed to Grantor's estate.

## ARTICLE VII

## NO COMMUTATION

During the Trust Term, the Trustee shall not distribute any income or principal of the trust to or for the benefit of any person other than Grantor. In no event shall Grantor's interests in this trust be commuted or prepaid.

## ARTICLE VIII

## SUCCESSOR TRUSTEE

The procedure for the resignation of a Trustee and for the appointment of a successor Trustee shall be as follows:

A. Resignation of Trustee. Any Trustee shall have the right to resign at any time by giving written notice to the beneficiaries. Such resignation shall become effective only upon acceptance of the trusteeship by a successor Trustee.

6

B. <u>Successor Trustee</u>. Ralph L. Falls, Jr. shall be the initial trustee of this trust. Ralph L. Falls, Jr. shall have the right at anytime to name his successor as trustee, either immediately or upon a stated event by executing an acknowledged instrument which shall be attached to this trust agreement. In the event Ralph L. Falls, Jr. resigns, becomes incapacitated, dies, or otherwise ceases to act as Trustee, without having appointed a successor trustee, the first person in the following descending order willing to serve shall become successor Trustee, without court order: Ralph L. Falls, III, John C. Hine, Wachovia Bank & Trust Company.

In the event none of such persons shall be willing to serve, the Clerk of Court of Wayne County, North Carolina County shall appoint a suitable person or financial institution to serve, after consultation with the law firm of Baddour, Parker, Hine & Orander, P.C., or its successor..

C. <u>Powers of Successor Trustee</u>. Any successor Trustee may exercise all the powers and authority conferred upon the original Trustee, including the right to resign, and shall not be liable for any acts or omissions of any predecessor Trustee, or be required to audit prior acts or pursue claims against prior Trustees.

D. <u>Trustee Compensation</u>. An individual Trustee may receive that compensation for such Trustee's services which is allowed by law at the time the services under this trust instrument are rendered. Any Trustee licensed as an attorney shall be entitled to compensation at his regular hourly rate for similar services. A corporate Trustee may receive compensation for its services in accordance with its published schedule of fees in effect at the time the services under this trust instrument are rendered.

E. <u>Waiver of Bond and Court Supervision</u>. No bond or other security shall be required from any Trustee. Any Trustee may act without qualifying before any court or filing

7

with any court any inventory, accounting or other report relating to the administration of the trust unless otherwise required by law to do so.

F. <u>No Requirement of Third Parties to Inquire into Trustee's Actions</u>. No person or institution dealing with the Trustee shall be required to see to the application of any money or other property delivered to the Trustee or to inquire into the necessity or propriety of any action taken or not taken by the Trustee.

G. <u>Accountings to Beneficiaries</u>. The Trustee shall furnish upon request, at least annually, accounts of receipts and disbursements of trust property to any beneficiary of this trust.

## ARTICLE IX

## POWERS

In addition to the powers conferred by law or elsewhere in this trust instrument, the Trustee is granted, subject to General Statutes Section 32-26, all those powers set forth in General Statutes Section 32-27, which are hereby incorporated by reference as they exist as of the execution of this trust.

The Trustee shall not exercise any discretionary power in a manner inconsistent with the qualifications of this trust as a Qualified Personal Residence Trust under applicable federal Code sections or regulations.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

Section 1. <u>Presumption of Survivorship.</u> If the Grantor and any beneficiary should die under such circumstances that there is uncertainty as to which person predeceased the other, it shall be conclusively presumed that the beneficiary predeceased Grantor.

8

Section 2. "Incapacitated" or "Not Competent". An individual shall be deemed "incapacitated" or "not competent" under any one or more of the following circumstances: (i) during any period that the individual is legally incompetent as determined by a court of competent jurisdiction; (ii) during any period beginning when two physicians licensed to practice medicine certify in writing that, in their opinion, the individual, as a result of illness, age or other cause, no longer has the capacity to act prudently or effectively in financial affairs and continuing until two such physicians (whether or not those making the initial determination) certify in writing that, in their opinion, the individual's capacity is restored; or (iii) during any period that the individual is absent without explanation or is being detained against his will under circumstances in which he does not have the capacity to act prudently or effectively in financial affairs.

Section 3. References to Internal Revenue Code. References to "the Code" mean the Internal Revenue Code of 1986, as amended from time to time.

## ARTICLE XI

## APPLICABLE LAW

All questions pertaining to the validity and construction of this instrument and to the administration of the trust shall be determined in accordance with the laws of North Carolina, despite that the Grantor, any beneficiary, a trustee, or the situs of any property shall be outside the State of North Carolina.

## ARTICLE XII

## STATEMENT OF INTENT AS TO CERTAIN TAX RESULTS

It is Grantor's intent that this trust shall qualify for the exception provided in Section 2702(a)(3)(A)(ii) of the Code as a transfer to a trust meeting the requirements of a qualified personal residence trust under Treasury regulations Section 25.2702-5. Therefore, all

9

questions relating to the Qualified Personal Residence Trust under this trust instrument shall be resolved accordingly, and construed in accordance with the guidelines established in the Code and Treasury Regulations. No powers and discretions of the Trustee shall be exercised except in a manner consistent with my intent.

IN TESTIMONY WHEREOF, the Grantor has signed this Trust Agreement and affixed the seal adopted by the Grantor, and the Trustee in acceptance of the Trust hereby created, has caused this Agreement to be signed and affixed the seal adopted by said Trustee, all as of the date first above written, in multiple originals.

_____ (SEAL)
RALPH L. FALLS, JR., Grantor

_____ (SEAL)
RALPH D. FALLS, JR., Trustee

STATE OF NORTH CAROLINA

COUNTY OF WAYNE

This is to certify that RALPH L. FALLS, JR., Grantor, personally appeared before me this 30th day of August, 2003, and acknowledged the due execution of the foregoing instrument.

_____ ( Mary C. Ussery )
Notary Public

My commission expires:

_____11-11-06_____

MARY C. USSERY
NOTARY
* * *
PUBLIC
WAKE COUNTY, N.C.

10

STATE OF NORTH CAROLINA

COUNTY OF ~~WAYNE~~ Wake

    This is to certify that RALPH L. FALLS, JR., Trustee, personally appeared before me this 30TH day of August, 2002, and acknowledged the due execution of the foregoing instrument.

                                    (Mary C. Ussery)
                            Notary Public

My commission expires:

           11-11-06

MARY C. USSERY
NOTARY
* * *
PUBLIC
WAKE COUNTY, N.C.

G:\Wp51\DATA\BARB\TRU\Falls QPRT.wpd

11

STATE OF NORTH CAROLINA

COUNTY OF CARTERET

FILED

2005 FEB -4 P 4:24

THIS LEASE, made and entered into as of the 5th day of December, 2005, by and between RALPH L. FALLS, III ("Landlord") and RALPH L. FALLS, JR. ("Tenant").

WHEREAS, Landlord owns certain real property which it hereby leases to Tenant, and Tenant hereby leases from Landlord, according to the following terms and conditions:

## RECITALS

On August 30, 2002, Tenant contributed a lot and house located on Evans Street, Morehead City, Carteret County, North Carolina to the Falls QPRT Trust, dated August 30, 2002, for a period of ten (10) years ending on August 29, 2012 or until Tenant's death, whichever comes first. If Tenant survives the expiration of the ten (10) year period, the trust is to terminate and the real property is to pass to landlord in fee simple on August 30, 2012. Landlord hereby agrees that upon acquiring the real property from the Falls QPRT on August 30, 2012, Landlord desires to lease said property to Tenant, and Tenant hereby agrees to lease said property from Landlord, according to the following terms and conditions set out herein.

## SECTION ONE

## DESCRIPTION OF PREMISES

The property leased is a certain parcel of land, together with all improvements thereon ("Premises") located in the City of Morehead City, Carteret County, North Carolina, being 2705 2507 Evans Street, Morehead City, Carteret County, North Carolina, and being more particularly described as follows:

BEGINNING at an existing iron pipe in the southern right-of-way margin of Evans Street, said existing iron pipe being the point of intersection of the northeast corner of Lot 520 and the northwest corner of Lot 519, Sunset Shores Subdivision, as said lots and subdivision are shown on that plat of record in Map Book 1, page 23, Carteret County Registry; thence from said point of beginning N. 84° 15' W. 106.0 feet along the southern right-of-way margin of Evans Street to a set iron rod; thence S. 05° 45' W. to the highwater mark of Bogue Sound; thence along the said highwater mark in an easterly direction to a point, said point being the place of intersection of the highwater mark of Bogue Sound and the common lot line (extended in a southerly direction) of

EXHIBIT
2

Lots 520 and 519, Sunset Shores Subdivision; thence N. 05° 45' E. to an existing iron pipe on the southern right-of-way margin of Evans Street, the point or place of beginning.

## SECTION TWO

### TERM

The term of this Lease shall be for one (1) year, commencing on August 30th, 2012, and ending on August 29, 2013.

## SECTION THREE

### OPTION TO RENEW

Unless Tenant affirmatively elects in writing not to renew, this Lease shall automatically renew for fifteen (15) additional periods of one (1) year each. The renewal each year shall occur automatically unless the Tenant notifies the Landlord in writing at least thirty (30) days prior to the end of the existing lease term that he does not intend to renew.

## SECTION FOUR

### RENT

As rental for the Premises, the Tenant shall pay to the Landlord, without notice or demand, a monthly sum mutually agreed between the Landlord and Tenant as a fair market value rental. If the parties cannot mutually agree on a fair market value rental, the rental shall be determined by a qualified appraiser, either agreed on by both parties; or if the parties cannot agree, to be appointed by the law firm of Baddour, Parker, Hine & Orander, P.C. or its successor, and such appraisal shall be binding on all parties. The Tenant shall pay the rent to the Landlord on or before the 1st day of each calendar month, in advance. Rentals shall, upon the demand of either party, be adjusted every January 1.

2

## SECTION FIVE

## TAXES AND ASSESSMENTS

Tenant shall pay all ad valorem property taxes which are imposed upon the Premises. Tenant may, at its expense (in its own name or in the name of Landlord), dispute and contest any tax or the valuation of the Premises.

## SECTION SIX

## REPAIRS AND DESTRUCTION OF IMPROVEMENTS

Tenant shall, at its own expense, keep and maintain the Premises in good, sanitary, and neat condition and repair.

In the event of the total destruction of the Premises, either Landlord or Tenant shall have the option for a period of 30 days to terminate this Lease. In the event of the partial destruction of the Premises, Landlord shall, at its own expense, promptly repair or restore the Premises to the condition as good or better than that which existed prior to such damage or destruction. Rental during any period of repair shall be abated proportionately as to unuseable area.

## SECTION SEVEN

## UTILITIES

Tenant shall promptly pay for all water, gas, heat, electricity, power, telephone service, and other public utilities of every kind furnished to the Premises.

## SECTION EIGHT

## INSURANCE

Tenant shall at its expense keep the Premises insured against loss or damage by fire and extended coverage hazards for replacement cost coverage.

All insurance policies shall be issued by insurers of recognized responsibility

3

authorized to do business in North Carolina. Tenant shall furnish to Landlord originals or copies of all policies which shall contain provisions requiring ten days' written notice to Landlord of cancellation.

Such insurance policies shall name Landlord and Tenant, as their interest may appear, as the beneficiaries of such insurance policies.

## SECTION NINE

## WARRANTIES OF TITLE AND QUIET POSSESSION

Landlord covenants that it owns the Premises in fee simple and has full right to make this Lease and that Tenant shall have quiet and peaceable possession of the Premises.

## SECTION TEN

## USE OF PREMISES

Tenant shall not make or permit any use of the Premises which will cause a cancellation of any insurance policy covering the Premises, nor permit illegal activities to be conducted on the Premises, nor shall Tenant sell, or permit to be kept, used, or stored, in or about the Premises, any hazardous or toxic substance, or any article which may be prohibited by the standard form of fire insurance policies. Tenant shall, at its sole cost, comply with all requirements of any insurance company, necessary for the maintenance of insurance.

Tenant shall comply with all applicable laws affecting the Premises, the breach of which might result in any penalty on Landlord or forfeiture of Landlord's title to the Premises. Tenant shall not commit, or suffer to be committed, any waste or nuisance on the Premises.

## SECTION ELEVEN

## SUBLETTING AND ASSIGNMENT

Tenant may not sublet the Premises in whole or in part without the Landlord's prior

4

written consent, which consent may not be unreasonably withheld. The making of any sublease shall not release Tenant from any of Tenant's obligations.

## SECTION TWELVE

## LIENS

Tenant shall keep all of the Premises free and clear of any and all mechanics', materialmen's, and other liens arising out of or in connection with work or labor done, services performed, or materials furnished in connection with any operations of Tenant. Tenant shall promptly pay for any alteration, improvement, construction or repairs which Tenant may make or permit and to indemnify Landlord against all such liens, claims of liens and suits.

## SECTION THIRTEEN

## CONDEMNATION

In the event that all, or such a substantial portion as would impair the Tenant's use and enjoyment of the Premises are taken in a condemnation proceeding, by exercise of any right of eminent domain, or voluntary conveyance in lieu of such taking, Tenant may, at its option, terminate this Lease on the date of such taking. If the taking does not substantially affect the Premises so as to impair the Tenant's use and enjoyment of the Premises, this Lease shall continue in full force and effect.

## SECTION FOURTEEN

## INDEMNIFICATION OF LESSOR

Landlord shall not be liable for any loss, injury, death, or damage to persons or property which may be suffered by Tenant or by any person who may be using, occupying or visiting the Premises, whether such loss, injury, death, or damage shall be caused by or result from any act, omission, or negligence of Tenant or of any occupant, subtenant, visitor,

5

or user of any portion of the Premises. Tenant shall indemnify and hold harmless Landlord on account of any such loss, injury, death, or damage. Tenant hereby waives all claims against Landlord for damages to the building, improvements and contents on the Premises and for injuries to persons or property on or about the Premises. The two preceding sentences shall not apply to loss, injury, death, or damage arising by reason of the negligence or misconduct of Landlord.

## SECTION FIFTEEN

## REDELIVERY OF PREMISES

At the expiration or sooner termination of this lease, Tenant shall peaceably surrender to Landlord the Premises in good order and condition.

## SECTION SIXTEEN

## PROHIBITION OF INVOLUNTARY ASSIGNMENT

The leasehold estate of Tenant shall not be subject to involuntary assignment, transfer, or sale in any manner whatsoever (except through statutory merger, devise by will, or intestate succession) and any such attempt shall be void and of no effect.

## SECTION SEVENTEEN

## DEFAULT

Tenant shall not be deemed to be in default in the payment of rent or the payment unless Landlord shall first give the Tenant ten (10) days' written notice and Tenant fails to cure such default within such ten (10) days.

## SECTION EIGHTEEN

## DISPOSITION OF IMPROVEMENTS ON TERMINATION OF LEASE

On termination of this Lease for any cause, Landlord shall become the owner of any building, improvements and fixtures on the Premises which cannot be removed without

6

damage to the Premises.

## SECTION NINETEEN

## WAIVER

The failure of Landlord to take action with respect to any breach of any term, covenant, or condition shall not be deemed to be a waiver of such term, covenant, or condition, or subsequent breach. The subsequent acceptance of rent by Landlord shall not be deemed to be a waiver of any preceding breach by Tenant, regardless of Landlord's knowledge at the time of acceptance of such rent.

## SECTION TWENTY

## EFFECT OF TENANT'S HOLDING OVER

Any holding over after the expiration of the term of this Lease, with consent of Landlord, shall be construed to be a tenancy from month to month, at the same monthly rental as required to be paid by Tenant for the period immediately prior to the expiration of the term, and shall otherwise be on the terms and conditions, so far as applicable.

## SECTION TWENTY-ONE

## NOTICES

All notices or demands provided to be given by either party to the other, shall be deemed to have been fully given when made in writing and deposited in the United States mail, registered and postage prepaid, and addressed as follows:

TO LANDLORD:

Ralph L. Falls, III
138 East 74th Street
New York, NY 10021

7

TO TENANT:

>Ralph L. Falls, Jr.
>1103 Cowper Drive
>Raleigh, NC 27608

The address to which any notice may be given may be changed by written notice given to the other party.

## SECTION TWENTY-TWO

## PARTIES BOUND

The covenants and conditions of this Lease shall apply to and bind the heirs, successors, executors, administrators, and assigns of all of the parties hereto.

## SECTION TWENTY-THREE

## MEMORANDUM OF LEASE

The parties will at any time, at the request of the other, promptly execute a memorandum of lease for recording purposes.

## SECTION TWENTY-FOUR

## APPLICABLE LAW

This Lease is being executed and intended to be performed in the State of North Carolina and shall be construed and enforced in accordance with the law of the State of North Carolina despite that any party, successor or assign shall now or in the future be a resident of any other state.

## SECTION TWENTY-FIVE

## ENTIRE AGREEMENT

This Lease expresses the entire understanding and agreement between Landlord and Tenant. This Lease cannot be modified, changed, or terminated except by a writing signed by the Landlord and Tenant. Time is of the essence of this Lease, and of each and every

8

covenant, term, and condition herein.

## SECTION TWENTY-SIX

## ARBITRATION

Any controversy, interpretation, dispute, or claim arising out of or relating to this agreement shall be settled by a single arbitrator. The arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") then in effect. The party desiring the arbitration shall give to the other parties written notice of his desire to arbitrate, specifying the questions to be arbitrated and naming an arbitrator. Within a reasonable time thereafter, not exceeding thirty (30) days, the other parties shall specify any additional questions to be arbitrated, and either agreeing to the arbitrator proposed or naming an alternate arbitrator. If the parties are unable to agree upon an arbitrator within thirty (30) days thereafter, the parties shall immediately notify AAA, which shall appoint an arbitrator in accordance with its then existing rules. The arbitration shall be conducted in North Carolina. The award determined by the arbitrator shall be final, and judgment may be entered upon the award in any court having jurisdiction of the matter. For the purpose of enforcing any arbitration award, the parties agree and consent to in personam jurisdiction in the State of North Carolina. The parties agree to split equally the cost of arbitration, although each party shall pay its own attorneys' fees.

9

IN WITNESS WHEREOF, the parties have executed this Lease on the day and year first above written.

LANDLORD:

_Ray 2 Falls_ (SEAL)
Ralph L. Falls, III

TENANT:

_Ralph t tells, Jr_ (SEAL)
Ralph L. Falls, Jr.

STATE OF _____NC_____
COUNTY OF _____WAKE_____

This is to certify that RALPH L. FALLS, III personally appeared before me this _27_ day of _DECEMBER_, 2005, and acknowledged the due execution of the foregoing Lease.

WITNESS my hand and Notarial Seal.

_____
Notary Public

My commission expires:

_MAY 28, 2006._

SMH STROUD
NOTARY
* * *
PUBLIC
WAKE COUNTY, N.C.

10

STATE OF _____ NC

COUNTY OF _____ WAKE

This is to certify that RALPH L. FALLS, JR. personally appeared before me this _____27_____ day of ~~TO Q~~ DECEMBER _____, 2005, and acknowledged the due execution of the foregoing Lease.

WITNESS my hand and Notarial Seal.

My commission expires:

_____MAY 28, 2006_____

_____

Notary Public

11

FILED

2015 FEB -4 P 12 34



FILE # 1512454

NORTH CAROLINA, CARTERET COUNTY
This instrument and this certificate are duly filed at
the date and time and in the Book and Page shown
on the first page hereof.

Jerry T. Hardesty, Register of Deeds
By: _____
Asst. Deputy, Register of Deeds

FOR REGISTRATION REGISTER OF DEEDS
Jerry T. Hardesty
Carteret County, NC
July 01, 2015  12:13:47
TRAVIS DEED       4 P
FEE: $26.00
FILE # 1512454

## NORTH CAROLINA SPECIAL WARRANTY DEED

Excise Tax: $ _____

Parcel Identifier No. 6376.20.81.8560000  Verified by _____ County on the ____ day of _____, 20____

By: _____

Mail/Box to: Lynn F. Chandler, Esq., Smith Moore Leatherwood LLP, 101 N. Tryon Street, Ste 1300, Charlotte, NC, 28246

This instrument was prepared by Lynn F. Chandler, Esq., SMITH MOORE LEATHERWOOD LLP (No title search or opinion rendered by preparer).

Brief description for the Index: L520 Part L521 Sunset Shores

THIS DEED made this ____ day of June, 2015, by and between

| GRANTOR | GRANTEE |
|---|---|
| RALPH L. FALLS III, as successor Trustee of the FALLS QPRT, Dated August 30, 2002 | RALPH L. FALLS III |
| Address: 69 Edgewood Road Summit, NJ 07901 | Address: 69 Edgewood Road Summit, NJ 07901 |

Enter in appropriate block for each party: name, address, and, if appropriate, character of entity, e.g. corporation or partnership.

The designation Grantor and Grantee as used herein shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

WHEREAS, pursuant to a deed recorded in Book 954, Page 182 in the Office of the Register of Deeds for Carteret County, Ralph L. Falls, Jr., as Trustee of the Falls QPRT, dated August 30, 2002 (the "Trust"), acquired title to the real property located in Morehead City, North Carolina, and more specifically described on Exhibit A attached hereto (the "Property");

WHEREAS, Ralph L. Falls, Jr. died on May 11, 2015;

WHEREAS, Ralph L. Falls III is designated as successor Trustee of the Trust pursuant to Article VIII of the said trust instrument;

WHEREAS, the Trust term ended on August 30, 2012; and

WHEREAS, Article VI of the said trust instrument provides that the Property shall be distributed upon termination of the Trust to Ralph L. Falls III, if then living.

NC Bar Association Form No. 6 © 1977, 2002
Printed by Agreement with the NC Bar Association – 1981 - Chicago Title Insurance Company

BOOK 1512    PAGE 454        ④



EXHIBIT
3

WITNESSETH, that the Grantor, for valuable consideration, the receipt of which is hereby acknowledged, has and by these presents does grant, bargain, sell and convey unto the Grantee in fee simple absolute all that certain land, together with all improvements thereon and all privileges and appurtenances thereto belonging, situated in Morehead Township, Carteret County, North Carolina and more particularly described as follows:

### SEE EXHIBIT A, attached hereto

The property described herein □ does ■ does not include the primary residence of the Grantor.

The property hereinabove described was acquired by Grantor by instrument recorded in Book 954, Page 182.

A map showing the above described property is recorded in Map Book ___, Page _____ of the Carteret County Registry.

TO HAVE AND TO HOLD the aforesaid lot or parcel of land and all privileges and appurtenances thereto belonging to the Grantee in fee simple.

And the Grantor covenants with the Grantee, that Grantor has done nothing to impair such title as Grantor received, and Grantor will warrant and defend the title against the lawful claims of all persons claiming by, under or through Grantor, other than the following exceptions:

Restrictions, easements and rights of way of record, if any, and to ad valorem taxes for the current year.

### [INTENTIONALLY LEFT BLANK; SIGNATURE PAGE TO FOLLOW]

NC Bar Association Form No. 6 © 1977, 2002
Printed by Agreement with the NC Bar Association – 1981 - Chicago Title Insurance Company

BOOK 1512 PAGE 454

IN WITNESS WHEREOF, the Grantor has duly executed the foregoing as of the day and year first above written.

FALLS QPRT, Dated August 30, 2002

_____ (SEAL)
RALPH L. FALLS III, successor Trustee

---

STATE OF NEW YORK
COUNTY OF NEW YORK

I certify that the following person(s) personally appeared before me this day, each acknowledging to me that he or she signed the foregoing document:  **RALPH L. FALLS III, as successor Trustee of the FALLS QPRT, DATED AUGUST 30, 2002.**

Today's Date: _June  26_, 20_15_        _____
                                        [Notary's signature as name appears on seal]

                                        _Caitlin Lettera_____
**CAITLIN LETTERA**                     [Notary's printed name as name appears on seal]
Notary Public - State of New York
No. 01LE6261470
Qualified in Richmond County            My commission expires: _May  14_, 20_16_
My Commission Expires May 14, 2016

[Affix Notary Seal in Space Above]

---

The foregoing Certificate(s) of _____
is/are certified to be correct. This instrument and this certificate are duly registered at the date and time and in the Book and Page shown on the first page hereof. _____ Register of Deeds for _____ County
By: _____ Deputy/Assistant - Register of Deeds

NC Bar Association Form No. 6 © 1977, 2002
Printed by Agreement with the NC Bar Association – 1981 – Chicago Title Insurance Company

BOOK _1512_  PAGE _454_

**EXHIBIT A**

**LEGAL DESCRIPTION**

BEING the lot and cottage located in Morehead City, North Carolina and more specifically described as follows:

BEGINNING at an existing iron pipe in the southern right-of-way margin of Evans Street, said existing iron pipe being the point of intersection of the northeast corner of Lot 520 and the northwest corner of Lot 519, Sunset Shores Subdivision, as said lots and subdivision are shown on that plat of record in Map Book 1, page 23, Carteret County Registry; thence from said point of beginning N. 84° 15'W. 106.0 feet along the southern right-of-way margin of Evans Street to a set iron rod; thence S. 05° 45'W. to the highwater mark of Bogue Sound; thence along the said highwater mark in an easterly direction to a point, said point being the place of intersection of the highwater mark of Bogue Sound and the common lot line (extended in a southerly direction) of Lots 520 and 519, Sunset Shores Subdivision; thence N. 05° 45'E. to an existing iron pipe on the southern right-of-way margin of Eváns Street, the point or place of beginning.

Being the same property conveyed to Ralph L. falls, Jr. in Deed Book 609 at Page 386, Deed Book 615 at Page 209, and Deed Book 682 at Page 117 of the Carteret County Registry.

CHARLOTTE 135521

NC Bar Association Form No. 6 © 1977, 2002
Printed by Agreement with the NC Bar Association – 1981 - Chicago Title Insurance Company

BOOK 1512 PAGE 454

| STATE OF NORTH CAROLINA | | IN THE GENERAL COURT OF |
| --- | --- | --- |

STATE OF NORTH CAROLINA         **IN THE GENERAL COURT OF
JUSTICE**

WAKE COUNTY                   **SUPERIOR COURT DIVISION
BEFORE THE CLERK
15-E-1997**

In the Matter of the Estate of      )

                          )

RALPH L. FALLS, JR.         )     **ORDER GRANTING EXECUTOR'S
MOTION TO TRANSFER TO
SUPERIOR COURT**

Deceased.             )

                          )

THIS CAUSE coming before the undersigned on the motion of Goldman Sachs Trust Company, N.A. as the Executor of the Estate of Ralph L. Falls, Jr. ("Executor"), to transfer this matter to the Superior Court, the undersigned hereby makes the following findings and conclusions of law:

    1.     Executor has requested relief under the Declaratory Judgment Act.

    2.     Pursuant to N.C. Gen. Stat. § 28A-2-4(b), either party in an estate proceeding, upon the filing of an action for declaratory relief, may move to transfer the proceeding to the Superior Court Division of the General Court of Justice.

    3.     Pursuant to N.C. Gen. Stat. § 28A-2-6(h), transfer to the Superior Court Division is mandatory when such a motion is filed and served by a party.

    4.     Executor has duly filed and served the Motion on counsel for Ralph L. Falls, III, who has filed a creditor's claim against the Estate.

IT IS THEREFORE ORDERD, ADJUDGED AND DECREED that the Motion to Transfer to Superior Court is GRANTED. The Clerk of Superior Court will transfer the matter to the Superior Court Division where the parties may litigate the Claim of Ralph Falls III, Executor's defenses thereto, and the declaratory relief sought by Executor.

**EXHIBIT**

4

This the _____ day of February, 2016.


_____
_____ Clerk of Superior Court
Wake County

**STATE OF NORTH CAROLINA**

**WAKE COUNTY**

**IN THE GENERAL COURT OF JUSTICE**
**SUPERIOR COURT DIVISION**
**BEFORE THE CLERK**
**15-E-1997**

In the Matter of the Estate of )
)
RALPH L. FALLS, JR. )
)
Deceased. )
)

**ORDER GRANTING EXECUTOR'S MOTION TO TRANSFER TO SUPERIOR COURT**

THIS CAUSE coming before the undersigned on the motion of Goldman Sachs Trust Company, N.A. as the Executor of the Estate of Ralph L. Falls, Jr. ("Executor"), to transfer this matter to the Superior Court, the undersigned hereby makes the following findings and conclusions of law:

1.      Executor has requested relief under the Declaratory Judgment Act.

2.      Pursuant to N.C. Gen. Stat. § 28A-2-4(b), either party in an estate proceeding, upon the filing of an action for declaratory relief, may move to transfer the proceeding to the Superior Court Division of the General Court of Justice.

3.      Pursuant to N.C. Gen. Stat. § 28A-2-6(h), transfer to the Superior Court Division is mandatory when such a motion is filed and served by a party.

4.      Executor has duly filed and served the Motion on counsel for Ralph L. Falls, III, who has filed a creditor's claim against the Estate.

IT IS THEREFORE ORDERD, ADJUDGED AND DECREED that the Motion to Transfer to Superior Court is GRANTED. The Clerk of Superior Court will transfer the matter to the Superior Court Division where the parties may litigate the Claim of Ralph Falls III, Executor's defenses thereto, and the declaratory relief sought by Executor.

1

This the _____ day of February, 2016.

_____

_____ Clerk of Superior Court
Wake County