IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No.: 5:16-CV-98

| | |
|---|---|
| In the Matter of the Estate of<br><br>RALPH L. FALLS JR.,<br><br>       Deceased.<br><hr>RALPH L. FALLS III,<br><br>       Counterclaimant/Third Party Plaintiff<br>v.<br><br>GOLDMAN SACHS TRUST COMPANY, N.A.,<br>as Executor of the Estate of RALPH L. FALLS,<br>JR., GOLDMAN SACHS TRUST COMPANY,<br>N.A., as Trustee of the RALPH LANE FALLS<br>REVOCABLE DECLARATION OF TRUST,<br>DIANNE C. SELLERS, LOUISE FALLS CONE,<br>individually and on behalf of her minor children<br>and unborn issue, and MARY COOPER FALLS<br>WING, individually and on behalf of her minor<br>children and unborn issue,<br><br>       Counterclaim/Third Party Defendants. | **ANSWER TO COMPLAINT FOR<br>DECLARATORY JUDGMENT AND<br>COUNTERCLAIM / THIRD PARTY<br>COMPLAINT FOR DECLARATORY<br>JUDGMENT** |

Ralph L. Falls III ("Falls III") hereby responds to the Estate of Ralph L. Falls Jr.'s

("Estate") Rejection of Creditor's Claim, Complaint for Declaratory Judgment, and Motion to

Transfer to Superior Court Division as follows:

## REJECTION OF CREDITOR'S CLAIM

    1.    Falls III filed a Creditor's Claim, pursuant to N.C GEN. STAT. §28A-19-1, on

September 10, 2015, which is a written document that speaks for itself.

2.     Falls III denies the allegations in Paragraph 2, including all subparts.

## ANSWER TO DECLARATORY JUDGMENT ACTION

1.     Falls III admits, upon information and belief, the allegations in Paragraph No. 1.

2.     Falls III admits, upon information and belief, the allegations in Paragraph No. 2.

3.     Falls III admits, upon information and belief, the allegations in Paragraph No. 3.

4.     Falls III admits, upon information and belief, the allegations in Paragraph No.4.

5.     Falls III admits, upon information and belief, the allegations in Paragraph No. 5.

6.     Falls III admits, upon information and belief, the allegations in Paragraph No 6.

7.     Falls III admits the allegations in Paragraph No. 7.

8.     In response to Paragraph No. 8 of the Complaint, Falls III admits he is a party to a lease of real property in Morehead City, Carteret County, North Carolina ("Evans Street Residence"). Except as expressly admitted, the allegation of Paragraph No. 8 of the Complaint are denied.

## JURISDICTION AND VENUE

9.     The allegations in Paragraph No. 9 contain legal conclusions to which no response is required.  To the extent that a response is deemed necessary, Falls III admits the allegations in Paragraph No. 9.

10.     The allegations in Paragraph No. 10 contain legal conclusions to which no response is required.  To the extent that a response is deemed necessary, Falls III admits the allegations in Paragraph No. 10.

11.     The allegations in Paragraph No. 11 contain legal conclusions to which no response is required.  To the extent that a response is deemed necessary, Falls III admits the allegations in Paragraph No. 11.

## FACTS

12.     Falls III admits, upon information and belief, the allegations in Paragraph No. 12.

13.     Falls III admits, upon information and belief, the allegations in Paragraph No. 13.

14.     Falls III admits that the QPRT is a written document that speaks for itself.  Except as expressly admitted, the allegations of Paragraph 14 of the Complaint are denied.

15.     Falls III admits that the QPRT is a written document that speaks for itself.  Except as expressly admitted, the allegations of Paragraph 15 of the Complaint are denied.

16.     Falls III admits that the QPRT is a written document that speaks for itself.  Except as expressly admitted, the allegations of Paragraph 16 of the Complaint are denied.

17.     Falls III admits the allegations in Paragraph No. 17.

18.     Falls III admits that the Lease is a written document that speaks for itself.  Except as expressly admitted, the allegations of Paragraph 18 of the Complaint are denied.

19.     Falls III admits that the Lease is a written document that speaks for itself.  Except as expressly admitted, the allegations of Paragraph 19 of the Complaint are denied.

20.     Falls III admits that the Lease is a written document that speaks for itself.  Except as expressly admitted, the allegations of Paragraph 20 of the Complaint are denied.

21.     Falls III admits that the Lease is a written document that speaks for itself.  Except as expressly admitted, the allegations of Paragraph 21 of the Complaint are denied.

22.     Falls III admits that the Lease is a written document that speaks for itself.  Except as expressly admitted, the allegations of Paragraph 22 of the Complaint are denied.

23.     Falls III admits, upon information and belief, the allegations in Paragraph No. 23.

24.     Falls III denies the allegations in Paragraph No. 24.

25.     Falls III denies the allegations in Paragraph No. 25.

26.     Falls III admits that the Lease is a written document that speaks for itself.  Falls III further admits that no rent was ever paid by Mr. Falls during his lifetime.  Except as expressly admitted, the allegations of Paragraph 26 of the Complaint are denied.

27.     Falls III admits the allegations in Paragraph No. 27 of the Complaint.

28.     Falls III admits the allegations in Paragraph No. 28.

29.     Falls III admits the allegations in Paragraph No. 29.

30.     Falls III admits that he did not make written demand directly to Mr. Falls to transfer title to the Evans Street Residence from the QPRT to Falls III, but did demand specific performance of Mr. Falls' obligation to transfer the title via a validly asserted counterclaim in Goldman Sachs, N.A. v. Falls, 5:14-cv-00777-FL, after expiration of the ten-year term of the lease.  Except as expressly admitted, the allegations of Paragraph 30 of the Complaint are denied.

31.     Falls III admits the allegations in Paragraph No. 31.

32.     Falls III admits that he requested that the Executor remove the boats stored at the Evans Street Residence because of concerns about possible damage to the property during hurricane season.   Except as expressly admitted, the allegations of Paragraph 32 of the Complaint are denied.

33.     Falls III admits an inventory of the personal property and furniture located in the Evans Street Residence was conducted and that Falls III requested that the Estate reimburse the expenses of his representative to be present during the inventory.  Except as expressly admitted, the allegations of Paragraph 33 of the Complaint are denied.

34.     Falls III admits that the Executor removed personal property from the Evans Street Residence in or about November 2015.  Except as expressly admitted, the allegations of Paragraph 34 of the Complaint are denied.

35.     Falls III admits that the Executor is not occupying the premises and delivered a set of keys to an appraiser.  Falls III further admits that the Estate contends that the lease was terminated effective November 30, 2015 and that Falls III should sell or rent the Evans Street Residence.  Except as expressly admitted, the allegations of Paragraph 35 of the Complaint are denied.

36.     Falls III admits that the Executor's counsel has corresponded with Falls III's counsel contending that the utilities and insurance for the Evans Street Residence should be transferred.  Except as expressly admitted, the allegations of Paragraph 36 of the Complaint are denied.

37.     Falls III admits that he contends that the Estate owes rent for the Evans Street Residence pursuant to the Lease, which is a document that speaks for itself.  Except as expressly admitted, the allegations of Paragraph 37 of the Complaint are denied.

38.     Falls III admits that the Executor has declared that it has terminated the Lease and that it does not intend to renew.  Except as expressly admitted, the allegations of Paragraph 38 of the Complaint are denied.

39.     Falls III admits that the Executor disagrees with his interpretation of the Lease and written documents regarding the Evans Street Residence seeks a declaration as to certain of the parties' respective rights and obligations from the Court.  Except as expressly admitted, the allegations of Paragraph 39 of the Complaint are denied.

## COUNT 1 – DECLARATORY JUDGMENT

40.     Falls III incorporates by reference Paragraphs 1 through 39 of his Answer as if fully set forth herein.

41.     Falls III admits that, (i) Executor is liable for payment of rent under the Lease from August 30, 2012 through August 30, 2016, and (ii) if certain other governing documents as more fully set forth in his Counterclaim / Third Party Complaint for Declaratory Judgment are valid, the Trustee of the Revocable Trust (as defined below) is required to maintain the Lease in full force and effect through August 30, 2028, including, without limitation, payment of property taxes, insurance, utilities, expenses to maintain the property, and a monthly rental rate to be set by an appointed appraiser. Falls III seeks a declaration of the validity or invalidity of the other governing documents in his Counterclaim for Declaratory Judgment.   Except as expressly admitted, the allegations of Paragraph 41 of the Complaint are denied.

42.     Falls III admits that the Executor asserts the contentions stated in Paragraph 42 of the Complaint.  Except as expressly admitted, the allegations of Paragraph 42 of the Complaint are denied.

43.     Falls III admits that the Executor asserts the contentions stated in Paragraph 43 of the Complaint.  Except as expressly admitted, the allegations of Paragraph 43 of the Complaint are denied.

44.     Falls III admits that the Executor asserts the contentions stated in Paragraph 44 of the Complaint.  Except as expressly admitted, the allegations of Paragraph 44 of the Complaint are denied.

45.     Falls III admits that the Executor asserts the contentions stated in Paragraph 45 of the Complaint.  Falls III further admits that the Lease is a written document that speaks for itself. Falls III further admits that the obligations of Executor and the Trustee of the Revocable Trust in regard to the Lease may be governed by certain other documents, the validity or invalidity of

which Falls III seeks a determination in his Counterclaim for Declaratory Judgment. Except as expressly admitted, the allegations of Paragraph 45 of the Complaint are denied.

46. Falls III admits, upon information and belief, the allegation in Paragraph No. 46. Falls III further admits that the obligations of Executor and the Trustee of the Revocable Trust in regard to the Lease may be governed by certain other documents, the validity or invalidity of which Falls III seeks a determination in his Counterclaim for Declaratory Judgment. Except as expressly admitted, the allegations of Paragraph 46 of the Complaint are denied.

47. Falls III admits that the Executor seeks the declaration as described in Paragraph 47 of the Complaint. Except as expressly admitted, the allegations of Paragraph 47 of the Complaint are denied.

## FIRST AFFIRMATIVE DEFENSE

By Falls Jr. and the Estate continuing to occupy the Evans Street Residence after the termination of the QPRT and after the death of Falls Jr., the Executor's claims for declaratory relief are barred by the doctrines of waiver and estoppel.

## SECOND AFFIRMATIVE DEFENSE

By Falls Jr. and the Estate continuing to occupy the Evans Street Residence after the termination of the QPRT and after the death of Falls Jr., the Executor's claims for declaratory relief are barred by the doctrine of laches.

## THIRD AFFIRMATIVE DEFENSE

By Falls Jr. and the Estate continuing to occupy the Evans Street Residence after the termination of the QPRT and after the death of Falls Jr., the Executor's claims for declaratory relief are barred by the doctrines of unjust enrichment.

## FOURTH AFFIRMATIVE DEFENSE

Falls III reserves the right to assert any and all additional defenses to conform to such facts as may be revealed in discovery or otherwise.

## COUNTERCLAIM AND THIRD PARTY COMPLAINT

Pursuant to Rules 13 and 14 of the Federal Rules of Civil Procedure, Ralph L. Falls III ("Falls III"), by way of further defense, and as a counterclaim against Goldman Sachs Trust Company, N.A., as Executor of the Estate of Ralph L. Falls, Jr. ("Counterclaim Defendant"); and as a third party complaint against Goldman Sachs Trust Company, N.A., as Trustee of the Ralph Lane Falls, Jr. Revocable Declaration of Trust, Dianne C. Sellers, Louise Falls Cone, individually and on behalf of her minor children and unborn issue, and Mary Cooper Falls Wing, individually and on behalf of her minor children and unborn issue, ("Third Party Defendants"), alleges and states as follows:

1.  Falls III realleges and incorporates herein by reference his responses to the Estate's Complaint for Declaratory Judgment and his Affirmative Defenses as set forth in the foregoing Answer.

## The Parties, Jurisdiction, And Venue

2.  Falls III is a citizen and resident of Summit, New Jersey.

3.  Ralph L. Falls, Jr. ("Falls Jr.") died on May 11, 2015, a citizen and resident of Wake County, North Carolina.

4.  On June 8, 2015, Falls Jr.'s Last Will and Testament, dated July 17, 2014, naming Goldman Sachs as Executor of the Estate of Ralph Falls, Jr. (the "Estate") was admitted to probate by the Wake County Clerk of Superior Court, along with a redacted copy of a Fifth Amendment to

Revocable Declaration of Trust by Ralph Lane Falls, Jr. (the "Fifth Amendment"). A true and accurate copy of the redacted Fifth Amendment is attached hereto as **Exhibit A**.

5.      Goldman Sachs Trust Company, N.A., as Trustee of the Ralph Lane Falls Declaration of Trust, is incorporated and organized under the laws of the state of Delaware and maintains its principal place of business in New York, New York.

6.      Upon information and belief, Dianne C. Sellers ("Sellers") is a citizen and resident of Wake County, North Carolina.

7.      Upon information and belief, Louise Falls Cone is a citizen and resident of Watauga County, North Carolina.

8.      Pursuant to the North Carolina Uniform Trust Code, G.S. § 36C-3-303, Louise Falls Cones represents and binds her minor children and unborn issue.

9.      Upon information and belief, Mary Cooper Falls Wing is a citizen and resident of Sagadahoc County, Maine.

10.      Pursuant to the North Carolina Uniform Trust Code, G.S. § 36C-3-303, Mary Cooper Falls Wing represents and binds her minor children and unborn issue.

11.      The identity of the unborn descendants and other beneficiaries who have or claim an interest in the Estate or Revocable Trust is presently unknown and not reasonably ascertainable. The interests of the unborn descendants and other beneficiaries are substantially identical to the interests of the Counterclaim Defendant / Third Party Defendants with respect to the matters that are the subject of this Counterclaim / Third Party Complaint and no conflict of interest exists between such persons and the Counterclaim Defendant / Third Party Defendants. Therefore, the Counterclaim Defendant / Third Party Defendants represent and bind the interests of any unborn descendants and other beneficiaries who have or claim an interest in the Estate or Revocable Trust.

To the extent that the identity of such persons becomes known, Falls III will seek leave to add them as parties to this action.

12.     Upon information and belief, Sellers, Louise Falls Cone, and Mary Cooper Falls Wing have or claim an interest which would be affected by the declaratory relief sought herein.

13.     Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction over the Complaint, Counterclaim, and Third Party Complaint because (a) there is diversity of citizenship between the parties and (b) the matter in controversy, exclusive of interest and costs, exceeds the value of $75,000.00.

14.     Pursuant to 28 U.S.C. § 1391, venue is appropriate in this Court because this civil action is brought in the judicial district where Falls Jr. allegedly resided, where the Estate is being administered, and where a substantial part of the events or omissions giving rise to the Complaint, Counterclaim, and Third Party Complaint occurred.

**Factual Allegations**

15.     Falls Jr. was diagnosed with bipolar disorder in 1981, which was treated with medication under the care of Dr. Richard Weisler until the time of his death.

16.     In addition to his mental health issues, Falls Jr. had an extensive history of alcohol abuse from 1960 to 1993.

17.     On September 1, 2007, Falls Jr. established three generation-skipping transfer trusts ("GST Trusts") for the benefit of his three children - Falls III, Louise Falls Cone, and Mary Cooper Falls Wing.  Falls III was named initial Trustee of the GST Trusts.

18.     Upon information and belief, Falls Jr. began a relationship with Sellers in or around 2008.

19.     At the time the relationship with Sellers began, Falls Jr. had a longstanding relationship with an estate planning attorney, John C. Hine, Esq., upon whom Falls Jr. had relied to handle all of his estate planning for decades.

20.     Falls Jr. retained Walter Brodie Burwell, Jr. ("Attorney Burwell") in or around 2011 to change his estate planning documents.  Upon information and belief, Falls Jr.'s change from his decades long relationship with estate planning attorney John C. Hine to Attorney Burwell was done at the urging of Sellers, who had a pre-existing attorney-client relationship with Attorney Burwell.

21.     On or about August 4, 2011, Falls Jr. executed an instrument entitled Revocable Declaration of Trust (the "Revocable Trust"), which was prepared by Attorney Burwell.

22.     Falls Jr. began experiencing a series of health related issues during 2012 and was first diagnosed with meningioma, benign brain tumors, in or around September 2012.

23.     On September 27, 2012, Falls Jr. executed a General Durable Power of Attorney Including Health Care Power of Attorney, prepared by his longtime estate planning attorney, John C. Hine, Esq., designating Falls III as his attorney-in-fact.  On the same date, Falls Jr. executed a Health Care Power of Attorney designating Sellers as his health care agent.  True and accurate copies of these instruments are attached hereto as **<u>Exhibit B</u>**.

24.     Falls, Jr. underwent surgery for removal of three brain tumors in September 2012, which resulted in complications with his bipolar disorder and the subsequent admission of Falls Jr. to the Duke University Hospital, where, upon information and belief, he remained until late November 2012.

25.     On or about December 14, 2012 and January 7, 2013, Falls Jr. executed amendments to the Revocable Trust, which were prepared by Attorney Burwell.

26.     On January 7, 2013, Falls Jr. also executed a General Power of Attorney designating Sellers as his attorney-in-fact.  This instrument was also prepared by Attorney Burwell, who notarized the signature of Falls Jr.  A true and accurate copy of this instrument is attached hereto as **Exhibit C.**

27.     Falls Jr. experienced further health issues in 2013 which required multiple surgeries including an ileostomy, multiple hernias, and an emergency splenectomy.

28.     In 2013, Falls Jr. relapsed and began drinking alcohol heavily.  Upon information and belief, this period of heavy drinking began in June 2013 and continued through September 2013.

29.     Upon information and belief, Falls Jr. was in a manic phase of his bipolar disorder beginning in or around August 2013 and continuing into late 2013.

30.     Falls Jr. fell and hit his head in or about October 2013, which resulted in lengthy hospital stays and admittance to convalescent centers, where he remained until January 2014 while receiving radiation treatment for a recurrence of brain tumors due to aggressive meningioma.

31.     On or about December 5, 2013, Nancy Ledford ("Ledford"), Falls Jr.'s bookkeeper, contacted Falls Jr.'s longstanding estate planning attorney, John C. Hine, Esq., and requested a copy of Falls Jr.'s Medical Power of Attorney designating Falls III as his attorney-in-fact. A true and accurate copy of Ledford's email and John Hine's reply is attached hereto as **Exhibit D**.

32.     At the request of yet unidentified persons, a mental evaluation and assessment was conducted on Falls Jr. in January 2014, to determine his mental capacity.  The evaluation was done by Manish A. Fozdar, MD, who issued a report dated January 13, 2014.

33.     On January 14, 2014, Falls Jr. executed a Revocation of General Durable Power of Attorney Including Health Care Power of Attorney, prepared by Attorney Burwell, revoking the

grant of authority to Falls III. A true and accurate copy of the Revocation of General Durable Power of Attorney is attached hereto as **Exhibit E**.

34. On or about March 17, 2014, Falls Jr. executed instruments removing Falls III as the initial Trustee of the GST Trusts, and naming John T. Bode as Successor Trustee. These instruments were prepared by Attorney Burwell, true and accurate copies of which are attached hereto as **Exhibit F**.

35. Falls Jr. executed a purported last will and testament on or about July 17, 2014 (the "Purported Will"), which was again prepared by Attorney Burwell. The Purported Will conveyed all his real and personal property to the Successor Trustee acting under the Revocable Trust previously executed on August 4, 2011, including any amendments to it in effect at the time of his death. A true and accurate copy of the Purported Will is attached hereto as **Exhibit G**.

36. An instrument further amending the Revocable Trust, which was again prepared by Attorney Burwell, was executed contemporaneously with the Purported Will on July 17, 2014.

37. On December 10, 2014, Falls Jr. executed the Fifth Amendment, which was also prepared by Attorney Burwell.

38. Purportedly on the same date that Falls Jr. executed the Fifth Amendment, Falls Jr. and Sellers applied for a marriage license in Wake County and were married. A true and accurate copy of the Application, License and Certificate of Marriage is attached hereto as **Exhibit H**.

39. The marriage was witnessed by Attorney Burwell and Ledford. (See Exhibit H)

40. Approximately two weeks later, Falls Jr. underwent a second brain surgery for recurrence of brain tumors due to aggressive meningioma.

41.     Falls Jr. remained in a convalescent center for months following the surgery and discharge from the hospital until his death on May 11, 2015.  During this time, Falls III's access to and communication with Falls Jr. was restricted by Sellers and other as yet unidentified persons.

42.     At the time of his death, Falls Jr. had three living children: Falls III, Louise Falls Cone, and Mary Cooper Falls Wing.

## COUNT I

## (COUNTERCLAIM – BREACH OF LEASE)

43.     Falls III incorporates by reference as if fully set forth herein the forgoing Paragraphs 1-42 of his Counterclaim / Third Party Complaint.

44.     On August 30, 2002, Falls Jr., as Grantor and Trustee, executed an agreement establishing an irrevocable qualified personal residence trust (the "Falls QPRT").  A true and accurate copy of the Falls QPRT is attached hereto as **Exhibit I**.

45.     The terms of the Falls QPRT provided that upon termination of the Falls QPRT at the expiration of the ten (10) year term, the trust property of the Falls QPRT, including the Property, was to be distributed to Falls III, outright and free of trust.

46.     The ten (10) year term of the Falls QPRT expired on August 29, 2012.

47.     On December 5, 2005, anticipating that title to the Property would pass to Falls III upon expiration of the ten (10) year term, Falls III and Falls Jr. executed a lease whereby Falls Jr. (as tenant) agreed to rent the Property from Falls III upon expiration of the ten (10) year term of the Falls QPRT (the "Lease"). A true and accurate copy of the Lease is attached hereto as **Exhibit J**.

48.     The initial term of the Lease commenced on August 30, 2012 and ended on August 29, 2013.  The Lease provided for automatic renewal for fifteen (15) additional terms of

one (1) year each unless Falls Jr. notified Falls III in writing at least thirty (30) days prior to the end of the existing term that he did not intend to renew.

49.     The Lease automatically renewed for additional one year terms on August 29, 2013 and August 29, 2014 and was in full force and effect at the death of Falls Jr. on May 11, 2015.

50.     The lease automatically renewed for an additional one year term on August 29, 2015 and is currently in full force and effect.

51.     The Lease required Falls Jr. to pay Falls III, without notice or demand, a monthly sum mutually agreed between them as fair market value rental or if the parties could not mutually agree on a fair market value rental, a rental to be determined by a qualified appraiser, to be appointed by the law firm of Baddour, Parker, Hine & Orander, P.C. or its successor, with such appraisal being binding on all parties.

52.     On or about February 3, 2016, John C. Hine, on behalf of Baddour, Parker, Hine & Orander, P.C. appointed Realty Services of Eastern Carolina, Inc. to appraise the Evans Street Residence and it determined the fair market value rental as Twenty-Five Hundred Dollars ($2,500.00) a month.  A true and accurate copy of the Appraisal is attached hereto as **Exhibit K**.

53.     During his lifetime, Falls Jr. failed to make any rental payments to Falls III.

54.     Since his death, the Estate has failed to make any rental payments to Falls III and has failed to pay property taxes, insurance, and other expenses of maintaining the property incurred since November 2015.

55.     Based on the appraisal, which is binding on all parties, the Estate owes Falls III One Hundred Twenty Thousand ($120,000.00) Dollars in rent for the period from August 2012 to August 2016.

<u>**COUNT II**</u>

**(DECLARATORY JUDGMENT – FIFTH AMENDMENT IS INVALID)**

56.     Falls III incorporates by reference as if fully set forth herein the forgoing Paragraphs 1-55 of his Counterclaim / Third Party Complaint.

57.     An actual controversy exists between the parties regarding the validity of the Fifth Amendment.

58.     Pursuant to 28 U.S.C.A. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, Falls III seeks a declaration that the Fifth Amendment is invalid because it was the product of undue and improper influence and duress or, alternatively, Falls Jr. lacked capacity to execute the Fifth Amendment.

59.     Upon information and belief, beginning as early as 2011, Falls Jr. was subject to the undue and improper influence of Sellers, Attorney Burwell, and other as yet unidentified persons, as evidenced by:

    a.  Falls Jr.'s advanced age, deteriorating health, and physical and mental weakness; and

    b.  Sellers' isolation of Falls Jr. from visiting with and communicating with his children and friends, including but not limited to Falls III and Mary Cooper Falls Wing; and

    c.  The termination of his longtime estate planning attorney, John C. Hine, Esq., in favor of Attorney Burwell, who, upon information and belief, was also the attorney of Sellers.

60.     The Fifth Amendment is substantially different from Falls Jr.'s previous estate plan and disinherits the natural objects of his bounty in favor of one or more persons with whom there are no ties of blood.

61.     The Trustee refused to provide the unredacted trust instrument to Falls III without restriction based on the grounds that Trustee was obligated only to share it with Trust beneficiaries and did so only subject to a confidentiality agreement that the Trustee contends does not allow Falls III to disclose information or attach a copy as an exhibit to this Crossclaim/Third Party Complaint.

62.     Upon information and belief, a fiduciary relationship existed between Falls Jr. and Sellers by virtue of a power of attorney prepared by Attorney Burwell designating Sellers as attorney-in-fact.  (See Exhibit C).

63.     Upon information and belief, a fiduciary relationship existed between Falls Jr. and Attorney Burwell by virtue of their attorney-client relationship.

64.     Because a fiduciary relationship existed between Falls Jr. and Sellers, Falls III is entitled to the legal presumption that the Fifth Amendment was the product of undue influence exerted on Falls Jr. by Sellers and Attorney Burwell.

65.     Because a fiduciary relationship existed between Falls Jr. and Attorney Burwell, Falls III is entitled to the legal presumption that the Fifth Amendment was the product of undue influence exerted on Falls Jr. by Sellers and Attorney Burwell.

66.     Upon information and belief, the Fifth Amendment is invalid and, in support thereof, the undersigned alleges as follows:

a.   The execution of the Fifth Amendment and the signature thereon were obtained by and as a result of undue and improper influence and duress upon Falls Jr. by Sellers, Attorney Burwell, and other as yet unidentified persons.

b.   At the time of the execution of the Fifth Amendment, Falls Jr. lacked testamentary capacity by reason of old age, disease, and both mental and physical weakness and infirmity which conditions existed and continued until his death.

67.    Pursuant to 28 U.S.C.A. § 2201 and Rule 57 of the Federal Rules of Procedure, Falls III seeks a declaration that the Fifth Amendment is invalid as the result of undue influence and/or lack of capacity.

## COUNT III

## (ALTERNATIVE DECLARATORY JUDGMENT – ENFORCEMENT OF LEASE PROVISION OF FIFTH AMENDMENT)

68.    Falls III incorporates by reference as if fully set forth herein the forgoing Paragraphs 1 to 67 of his Counterclaim / Third Party Complaint.

69.    An actual controversy exists between the parties regarding the rights and obligations of Falls III and the Trust pursuant to Article VI, Section 1, Paragraph I (the "Lease Provision") of the Fifth Amendment.

70.    Pursuant to 28 U.S.C.A. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, Falls III seeks a declaration that, if the Fifth Amendment is valid, the Lease Provision is unambiguous on its face and, therefore, the Trustee of the Revocable Trust is required to keep the Lease in "full force and effect and fully perform all obligations existing under" the Lease; accordingly, the Trustee is required to continue the Lease in full force and effect through and

including August 29, 2028, including, without limitation, payment of property taxes, insurance, utilities, expenses to maintain the property, and a monthly rental of $2,500 per month.

71.     The Fifth Amendment contains the following provision:

> I.     Lease.  I direct my Trustee to take all actions which may be required to keep all leases in full force and effect and fully perform all obligations existing under any leases, specifically including the lease I have relating to property on Evans Street, Morehead City, North Carolina [("Evans Street Residence")]. (Exhibit A).

72.     Additionally, pursuant to the Lease Provision in the Fifth Amendment, the Trustee is required to keep the Lease in "full force and effect and fully perform all obligations  existing under" the Lease; accordingly, the Trustee is required to continue the Lease in full force and effect, including the automatic renewal for additional one-year terms through and including August 29, 2028.

73.     Pursuant to 28 U.S.C.A. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, Falls III seeks a declaration that should the Court find the Fifth Amendment to be valid, the Court enforce the Lease Provision, Article VI, Sec. 1.I. and order the Trustee to fully perform all obligations under the Lease.

## PRAYER FOR RELIEF

WHEREFORE, Ralph L. Falls III respectfully prays to the Court for the following relief:

1.     That the Estate's Complaint for Declaratory Judgment be dismissed with prejudice;

2.     That the Court enter judgment in Defendant's favor and award Falls III his actual damages, in an amount to be proven at trial;

3.     That the Court enter a declaration that:

a. the Fifth Amendment to Revocable Declaration of Trust by Ralph Lane Falls Jr. is invalid as the result of undue influence and/or lack of capacity;

b. in the alternative, the Fifth Amendment to Revocable Declaration of Trust by Ralph Lane Falls Jr. requires the Trustee maintain in full force and effect and fully perform all obligations under the Lease and pay fair market value rent to Ralph L. Falls III for the entire term of the Lease, including automatic renewals for additional one-year terms until the Lease terminates on August 29, 2028;

4. That the costs of this action, including attorneys' fees be taxed against the Estate to the extent permitted by law, including N.C. Gen. Stat. § 6-21.2;

5. That a trial by jury be provided on all issues so triable; and

6. That the Court award such other and further relief as it deems just and proper.

This the 17th day of March, 2016.

/s/ Jonathan P. Heyl
Lynn F. Chandler
N.C. State Bar No. 23378
Jonathan P. Heyl
N.C. State Bar No. 25559
Timothy P. Lendino
N.C. State Bar No. 43003
SMITH MOORE LEATHERWOOD LLP
101 North Tryon Street
Suite 1300
Charlotte, North Carolina 28246
Telephone: (704) 384-2600
Facsimile: (704) 384-2800
E-mail: lynn.chandler@smithmoorelaw.com
        jon.heyl @smithmoorelaw.com
Attorneys for Ralph L. Falls III

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

This the 17th day March, 2016.

<u>*/s/ Jonathan P. Heyl*</u>
Jonathan P. Heyl
*Attorney for Ralph L. Falls III*