IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CV-98-FL

| | |
|---|---|
| In the Matter of the Estate of )<br>)<br>RALPH L. FALLS, JR., )<br>)<br>             Deceased. )<br>)<br>────────────────────── )<br>)<br>RALPH L. FALLS, III, )<br>)<br>             Counterclaimant/ )<br>             Third-Party Plaintiff, )<br>)<br>    v. )<br>)<br>GOLDMAN SACHS TRUST )<br>COMPANY, N.A., as Executor of the )<br>Estate of RALPH L. FALLS, JR., and as )<br>Trustee of the RALPH LANE FALLS )<br>REVOCABLE DECLARATION OF )<br>TRUST; DIANNE C. SELLERS; )<br>LOUISE FALLS CONE, individually and )<br>on behalf of her minor children and unborn )<br>issue; MARY COOPER FALLS WING, )<br>individually and on behalf of her minor )<br>children and unborn issue, )<br>)<br>             Counterclaim/ )<br>             Third-Party )<br>             Defendants. ) | ORDER |

This matter is before the court on Goldman Sachs Trust Company, N.A.'s ("Goldman Sachs") motion to remand and transfer the action, and for attorney fees and costs, pursuant to 28 U.S.C. §§ 1441(a), 1447(c). (DE 18). The issues raised have been briefed fully, and in this posture are ripe for ruling. For the reasons that follow, Goldman Sachs's motion is granted

with respect to remand, denied with respect to attorney fees and costs, and denied with respect to transfer.

**BACKGROUND**

Ralph L. Falls, Jr. ("Falls Jr.") passed away on May 11, 2015. Falls Jr. was a citizen and resident of North Carolina, through and including the date of his death. Ralph L. Falls, III ("Falls III"), is the son of Falls Jr., and he is a citizen and resident of New Jersey.

On June 8, 2015, Falls Jr.'s will was admitted to probate by the Clerk of Superior Court, Wake County, North Carolina ("Wake County Clerk of Superior Court" or "Clerk"). (DE 15-7). The will named Goldman Sachs as executor of Falls Jr.'s estate (the "Estate"). Goldman Sachs subsequently applied for and was issued letters testamentary, and qualified as executor of the Estate.[1]

On September 10, 2015, Falls III filed with the Estates Division of the Wake County Clerk of Superior Court, a creditor's claim against the Estate, pursuant to section 28A-19-1 of the North Carolina General Statutes. (DE 1-1). Falls III's creditor's claim sought to recover $255,000.00 from the Estate for its and Falls Jr.'s alleged breach of a lease pertaining to real property located at 2507 Evans Street, Morehead City, North Carolina (the "Lease").[2] In his creditor's claim, Falls III is the putative landlord, and the Estate is named as the putative tenant.

---

[1] For purposes of this order, "Goldman Sachs" refers to Goldman Sachs in its capacity as executor of the Estate. Unless specified, the order does not refer to Goldman Sachs in its capacity as trustee of the Ralph Lane Falls Revocable Declaration of Trust.

[2] A breach of contract matter involving an alleged loan by Falls Jr. to Falls III, concerning a different property in New Jersey, currently is pending before the court. Goldman Sachs Trust Company, N.A. v. Ralph L. Falls, III, No. 5:14-CV-777-FL. A motion for summary judgment pending in that matter will be addressed by separate order.

On February 4, 2016, Goldman Sachs filed with the Estates Division of the Wake County Clerk of Superior Court, a response titled "Rejection of Creditor's Claim, Complaint for Declaratory Judgment, and Motion to Transfer to Superior Court Division." (DE 1-2). In the first section of the response, Goldman Sachs rejects Falls III's creditor's claim on a number of different bases. In the second section, Goldman Sachs requests declaratory judgment, pursuant to sections 1-253 and 28A-2-4 of the North Carolina General Statutes, to adjudicate the amount, if any, that the Estate owes to Falls III based upon alleged breach of the Lease. In the third section, Goldman Sachs moves to transfer the proceeding from the Wake County Clerk of Superior Court to the Wake County Superior Court Division of the General Court of Justice ("Superior Court Division"),[3] pursuant to sections 28A-2-4(b) and 28A-2-6(h) of the North Carolina General Statutes.

On March 3, 2016, Falls III filed with this court a notice of removal pursuant to 28 U.S.C. § 1441 (DE 1), in which he bases removal upon diversity jurisdiction.[4] Subsequently, on March 17, 2016, Falls III submitted a filing titled, "Answer to Complaint for Declaratory Judgment and Counterclaim / Third Party Complaint for Declaratory Judgment." (DE 15). In a section labeled "Counterclaim and Third Party Complaint," Falls III asserts three counterclaims and names four third-party defendants.[5] The first counterclaim seeks to recover $120,000.00 for breach of the Lease,

---

[3] "The Superior Court Division of the General Court of Justice consists of the several superior courts of the State. The clerk of superior court . . . is a judicial officer of the Superior Court Division." N.C. Gen. Stat. § 7A-260. "All civil actions and proceedings in the General Court of Justice are instituted in . . . the office of the clerk of superior court." Id. § 7A-255.

[4] See 28 U.S.C. § 1332. In the notice of removal, Falls III asserts that Goldman Sachs is domiciled in Delaware and New York. However, as executor of the Estate, Goldman Sachs is "deemed to be a citizen of the same State as the decedent." Id. § 1332(c)(2). Accordingly, Goldman Sachs is deemed to be a citizen of North Carolina, the state in which Falls Jr. was domiciled at his death. See id. As noted above, Falls III is a citizen of New Jersey.

[5] Specifically, Falls III names Goldman Sachs, as trustee of the Ralph Lane Falls Revocable Declaration of Trust; Dianne C. Sellers; Louise Falls Cone; and Mary Cooper Falls Wing ("third-party defendants").

3

which is the same lease that serves as the basis for his creditor's claim. The second and third counterclaims involve the validity and interpretation of an amendment to the Lease.

On March 30, 2016, Goldman Sachs filed the instant motion to remand and transfer this action, and for attorney fees and costs. (DE 18). In support of remand, Goldman Sachs argues that Falls III is the proper plaintiff for purposes of removal under federal law, and thus removal was procedurally improper. On April 1, 2016, Falls III filed a memorandum in opposition (DE 22), in which he argues that he is properly considered defendant in this action, rendering removal proper. On April 7, 2016, Goldman Sachs filed a reply. (DE 29).

**DISCUSSION**

A.  Removal and Remand

Goldman Sachs argues that it was procedural error for Falls III to file notice of removal of this action to federal court pursuant to 28 U.S.C. § 1441. While Goldman Sachs concedes that diversity may exist for purposes of federal jurisdiction under § 1332, it argues that Falls III's status as plaintiff in this action prohibits removal because only defendants may remove actions under § 1441.

A civil action which is brought in state court, but over which federal courts have original jurisdiction, may be removed by a defendant to the federal district court embracing the place where the action is pending. Id. § 1441(a). Removal based upon diversity jurisdiction requires that "the matter in controversy exceed[ ] the sum or value of $75,000, exclusive of interests and costs, and [be] between [ ] citizens of different States." Id. § 1332(a). An action filed in state court that meets these requirements may be removed to federal court if no defendant is a citizen of the state where

4

the action originally was brought. See id. § 1441(b); Lontz v. Tharp, 413 F.3d 435, 439 (4th Cir. 2005).

"Because removal jurisdiction raises significant federalism concerns, [federal courts] must strictly construe removal jurisdiction. If federal jurisdiction is doubtful, a remand is necessary." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994) (internal citations omitted). This presumption against removal jurisdiction places the "burden of establishing federal jurisdiction . . . upon the party seeking removal." Id.

With regard to remand pursuant to 28 U.S.C. § 1441, federal law determines the identity of parties for purposes of removal, and the United States Supreme Court has construed the terms "defendant or [ ] defendants" to mean that parties identified as plaintiffs may not remove an action to federal court. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 104 (1941) ("The removal statute which is nationwide in its operation, was intended to be uniform in its application, unaffected by local law definition."). Accordingly, removal based upon "[d]iversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants." City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69 (1941).

Courts in the Fourth Circuit apply the "principal purpose" test to identify plaintiffs and defendants for purposes of removal: "First, we determine the primary issue in controversy, and then we align the parties according to their positions with respect to the primary issue." Palisades Collections LLC v. Shorts, 552 F.3d 327, 337 (4th Cir. 2008) (quoting United States Fid. & Guar. Co. v. A & S Mfg. Co., 48 F.3d 131, 132–33 (4th Cir. 1995) ["Fidelity"]). The primary purpose of a suit is determined "by the pleadings and the nature of the controversy," id. at 134, although courts also may "look beyond the pleadings [to] arrange the parties according to their sides in the dispute."

5

City of Indianapolis, 314 U.S. at 69 (internal quotations omitted) ("[Alignment] is therefore not to be determined by mechanical rules. It must be ascertained from the principal purpose of the suit."). After aligning the parties, "[i]f the alignment differs from that in plaintiff's complaint, we look to whether diversity jurisdiction still exists." Builders Mut. Ins. Co. v. Dragas Mgmt. Corp., 497 F. App'x 313, 316 (4th Cir. 2012).

For example, in Palisades Collections LLC, Palisades initiated a collection action in West Virginia state court against Charlene Shorts, a West Virginia resident, to recover unpaid charges on Shorts's cellular phone service contract. 552 F.3d at 329. Shorts filed an answer and a counterclaim against Palisades, and she also joined an additional counter-defendant. Id. The counter-defendant removed the case to federal court on the basis of diversity jurisdiction, and Shorts filed a motion to remand to state court. Id. Applying the principal purpose test, the court found that "Palisades's principal purpose in filing the suit was to collect Shorts's debt. On that issue, Palisades and Shorts were properly aligned [as plaintiff and defendant, respectively]." Id. at 337. Therefore, the court held that the counter-defendant could not remove the case to federal court. Id. at 336.

In Fidelity, an insurer, Fidelity, filed a declaratory judgment against a company it insured, A & S, along with several companies serving as co-insurers of A & S. 48 F.3d at 132. Fidelity based its declaratory judgment action against the parties upon the following allegations: first, that it owned no duty to indemnify A & S for certain environmental liabilities; and second, that if Fidelity must indemnify A & S, then the co-insurers owed Fidelity a duty of contribution. Id. Shortly thereafter, A & S filed a "virtually identical" declaratory judgment action in state court against Fidelity and the co-insurers. Id.

6

On a motion to realign the parties, the court in Fidelity applied the principal purpose test, finding that "any disputes existing among [Fidelity and the co-]insurers regarding contribution [to each other] are ancillary to the primary issue of the [insurers'] duty to indemnify [A & S]." Id. at 134. The court reasoned that all of the insurers "share the primary goal of avoiding obligations to A & S." Id. Accordingly, the court "arranged the parties around this primary dispute, placing the insurers as plaintiffs and the insured as the defendant," which ultimately led to dismissal for lack of diversity jurisdiction due to common citizenship between a co-insurer and A & S. Id. at 132, 134; see also United States Fid. & Guar. Co. v. Thomas Solvent Co., 955 F.2d 1085, 1088–91 (6th Cir. 1992); Emp'rs Ins. of Wausau v. Crown Cork and Seal Co., 942 F.2d 862, 864–67 (3d Cir. 1991).

Here, Falls III describes his initial creditor's claim against Goldman Sachs as follows: "The basis of the Claim is rent and other amounts due [to Falls III] under a Lease, dated December 5, 2005." (DE 1-1 ¶ 1). In its responsive filing, Goldman Sachs "disputes and disagrees with [Falls III]'s interpretation of the Lease Document" (DE 1-2 ¶ 41); seeks declaratory judgment regarding [the Estate's] responsibilities under the lease; and requests to transfer the action to the Wake County Superior Court Division, "where the parties may litigate the Claim of Ralph Falls III, . . . and the declaratory relief sought by [Goldman Sachs]." (DE 1-2 ¶ 1). After removing the action from state court to this court, Falls III asserts against Goldman Sachs a counterclaim, titled "BREACH OF LEASE," which is based upon the same lease contract, and which he argues supports his claim that "the Estate owes Falls III One Hundred Twenty Thousand ($120,000.00) Dollars in rent." (DE 15, 15 ¶ 55).

The nature of the controversy between Falls III and Goldman Sachs resembles the principal purposes the of the lawsuits in Palisades Collections LLC and Fidelity. See 552 F.3d 327; 48 F.3d

7

131. For example, the lawsuits originated in the same manner: in Palisades Collections LLC, the party judged to be the plaintiff, Palisades, first filed suit in order to resolve an alleged debt based upon a services contract with Shorts, the defendant, 552 F.3d at 329; in Fidelity, the plaintiff, Fidelity, first filed suit in order to resolve a dispute based upon an insurance contract with A & S, the defendant, 48 F.3d at 132; and in the instant case, Falls III first filed his claim in order to collect an alleged debt based upon the Lease contract with the Estate. (See DE 1-1 ¶ 1).

In addition, this case resembles Palisades Collections LLC and Fidelity in that it centers upon two primary parties, but involves third parties whose liability depends upon resolution of the primary parties' dispute. See Palisades Collections LLC, 552 F.3d at 329 (holding that the counter-defendant is not a defendant for purposes of removal under 28 U.S.C. § 1441(a)); Fidelity, 48 F.3d at 134 ("A court . . . first would have to decide whether the insurers were under any obligation to . . . indemnify A & S. If none . . . provided coverage, the question of the insurers' liability to each other would be moot."). Here, Falls III and Goldman Sachs are the primary parties in Falls III's creditor's claim, Goldman Sachs's declaratory judgment action, and Falls III's counterclaim, because in all three actions Falls III seeks damages from Goldman Sachs based upon alleged breach of the Lease contract. Although Falls III's third-party complaint adds third-party defendants, those defendants only are involved indirectly as beneficiaries of the Estate, and their interests in the action depend primarily upon Falls III's claim against the Estate for payment of alleged back rent.[6] Taken together, the parties' pleadings and the nature of their dispute reveal that the "primary issue in

---

[6] Specifically, "[Dianne C.] Sellers, Louise Falls Cone, and Mary Cooper Falls Wing have or claim an interest which would be affected by the declaratory relief sought," as they "represent and bind the interests of any unborn descendants and other beneficiaries who have or claim an interest in the Estate." (DE 15, 9 ¶¶ 11–12).

controversy" is Falls III's claim against the Estate for alleged breach of the Lease contract. See Palisades Collections LLC, 552 F.3d at 337.

Next, the court must "align the parties according to their positions with respect to the primary issue," id., and determine whether removal to federal court remains appropriate. See Builders Mut. Ins. Co., 497 F. App'x at 316. Here, Falls III must be aligned as plaintiff, where the primary issue in controversy is alleged breach of the Lease, and where Falls III first initiated his creditor's claim against the Estate in order to collect back rent from Goldman Sachs for alleged breach of the Lease. Cf. Palisades Collections LLC, 552 F.3d at 337 ("Palisades's principal purpose in filing the suit was to collect Shorts's debt. On that issue, Palisades and Shorts were properly aligned [as plaintiff and defendant, respectively]."). As beneficiaries of the Estate, the third-party defendants share Goldman Sachs's goal of avoiding obligations to Falls III, and therefore they properly are aligned as defendants in opposition to Falls III's claim for breach of contract. Cf. Fidelity, 48 F.3d at 134 ("The insurers share the primary goal of avoiding obligations to A & S, and the district court properly realigned them . . . opposite [A & S].").

Where the principal purpose of this action is Falls III's claim against Goldman Sachs for alleged breach of the Lease, and where Falls III is aligned as plaintiff opposite Goldman Sachs as defendant, procedure under 28 U.S.C. § 1441(a) does not permit Falls III's removal of this case. See Shamrock Oil & Gas Corp., 313 U.S. at 104. Therefore, Goldman Sachs's motion to remand the case to the Wake County Clerk of Superior Court must be granted, pursuant to 28 U.S.C. § 1447(c).

Falls III's arguments to the contrary are unavailing. Falls III's first argument is that his creditor's claim against Goldman Sachs did not commence a civil action under the North Carolina Rules of Civil Procedure, see N.C. Gen. Stat. § 28A-19-1; N.C. R. Civ. P. 3, 4, and therefore it did

9

not create roles of plaintiff or defendant. However, Falls III's exclusive reliance upon state law is misplaced; federal law determines which party is a defendant entitled to remove a case to federal court. See Shamrock Oil & Gas Corp., 313 U.S. at 104; Chase Nat'l Bank, 314 U.S. at 69 ("Diversity jurisdiction cannot be conferred . . . by the parties' own determination of who are plaintiffs and who defendants"). Falls III lacks federal authority to show that his creditor's claim did not create plaintiffs and defendants for purposes of removal, and therefore his argument fails.

Falls III's second argument is that the Clerk lost jurisdiction when Goldman Sachs rejected his creditor's claim. This argument fails for similar reasons. Falls III cites North Carolina statutes to support his position that when Goldman Sachs rejected his creditor's claim in its responsive filing on February 4, 2016, the filing concluded the action and terminated the Clerk's jurisdiction. See N.C. Gen. Stat. §§ 28A-2-4(c)(1), 28A-19-16. Then, Falls III argues, by way of a different section within the same filing on February 4, Goldman Sachs simultaneously initiated an entirely new action by requesting declaratory judgment on the amount owed by the Estate, if any, under Falls III's creditor's claim. This is a strained reading of Goldman Sachs's responsive filing. Rather than separate Falls III's creditor's claim from its request for declaratory judgment, Goldman Sachs explicitly incorporates and responds to Falls III's creditor's claim within its request for declaratory judgment: "Executor [Goldman Sachs] seeks a declaration of . . . [whether] the Lease Document is invalid or unenforceable, contrary to the contention by Ralph Falls III, [and whether] the Estate is not obligated to make any payment to Ralph Falls III for past or future rentals claimed as owing." (DE 1-2, 10 ¶ 47). Moreover, Falls III's argument concerning the Clerk's jurisdiction relies upon similar state statutes found above to be inapposite in determining removal to federal court. Accordingly, Falls III's argument on this point fails as well.

10

Falls III repeats the same error in his attempt to distinguish two United States district court cases relied upon by Goldman Sachs. In <u>Estate of Spragins v. Citizens Nat'l Bank of Evansville</u>, 563 F. Supp. 424 (N.D. Miss. 1983), a bank filed a creditor's claim against an estate, the estate's executor rejected and challenged the creditor's claim, and the bank removed the action to federal court, whereupon the district court rejected the bank's argument that it was a defendant for purposes of removal and remanded the case to state court. 563 F. Supp. at 425–26, 428. The second case, <u>In re Estate of Duane</u>, 765 F. Supp. 1200 (S.D.N.Y. 1991), involved very similar facts and procedural history, and it resulted in the same outcome. <u>See</u> 765 F. Supp. at 1200–01. Falls III argues that <u>Estate of Spragins</u> and <u>In re Estate of Duane</u> are distinguishable from the instant case because those states' probate courts retain jurisdiction following an executor's denial of a creditor's claim. However, this distinction is not determinative, where the district courts in both cases did not rely upon the procedural rules of the state probate courts, and where both district courts applied tests based upon federal law to identify plaintiffs and defendants for purposes of removal to federal court. <u>See</u> <u>Estate of Spragins</u>, 563 F. Supp. at 427–28; <u>In re Estate of Duane</u>, 765 F. Supp. at 1201–02.

In summary, Falls III's arguments that his creditor's claim did not initiate a civil action with plaintiffs and defendants, that his creditor's claim ended with termination of the Clerk's jurisdiction, and that Goldman Sachs became the plaintiff upon filing its responsive request for declaratory judgment, all are without merit. As a result, Falls III fails to satisfy the procedural requirement that he be a "defendant" for purposes of removal pursuant to 28 U.S.C. § 1441.[7] Therefore, the court

---

[7] This finding renders moot Falls III's remaining arguments against Goldman Sachs's motion to remand. First, the issue of parties' diversity for purposes of federal jurisdiction is irrelevant because lack of diversity is not a basis for granting Goldman Sachs's motion to remand; moreover, no party disputes that Falls III and Goldman Sachs are citizens of different states. Second, timeliness of Falls III filing his motion to remove is irrelevant because Falls III may not remove this case at any time under 28 U.S.C. § 1441. Lastly, disagreement over application of the probate exception is moot because in returning the case to state court, this court does not dispose of any property in the custody of a probate

grants Goldman Sachs's motion to remand the case to the Wake County Clerk of Superior Court, pursuant to 28 U.S.C. § 1447(c).

B.  Costs and Attorney Fees

Goldman Sachs requests that the court award it costs and attorney fees incurred as a result of removal. The removal statute provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). An award of fees is appropriate under § 1447 where the removing party "lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). In applying this standard, courts may review "the complaint, relevant statutes, and binding precedent" affecting the issue of removal. See Int'l Legware Grp., Inc. v. Americal Corp., No. 5:10-CV-153-D, 2010 WL 3603784, at *4 (E.D.N.C. Sept. 8, 2010). "Questions of removal are often complicated, . . . . [and] [e]rroneous removal might very well be the result of an honest but forgivable mistake of legal judgment." In re Crescent City Estates, LLC, 588 F.3d 822, 830 (4th Cir. 2009). However, "bad faith is not a prerequisite to an award of attorney's fees under § 1447(c)." In re Lowe, 102 F.3d 731, 733 n.2 (4th Cir. 1996).

In In re Lowe, the Fourth Circuit Court of Appeals held that removal was erroneous, but declined to grant a motion for attorney fees and costs where it could find only one case addressing a particular question affecting the issue of removal. 102 F.3d at 733 n.2, 735–36 ("As evidenced by the significant proceedings in this court and the court below, the issues [regarding removal] in this case are not . . . obvious."). By way of contrast, the court cited approvingly a United States

---

court. See Marshall v. Marshall, 547 U.S. 293, 311–12 (2006) ("[T]he probate exception reserves to state probate courts . . . the administration of a decedent's estate. . . . But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.").

12

district court opinion granting a motion for attorney fees and costs under circumstances where "a cursory examination would have revealed a lack of federal jurisdiction" for purposes of removal. Id. at 733 n.2 (citing Husk v. E.I. Du Pont De Nemours & Co., 842 F. Supp. 895, 899 (S.D. W. Va. 1994)).

Goldman Sachs argues it is entitled to costs and attorney fees pursuant to 28 U.S.C. § 1447(c), on the basis that cases such as Estate of Spragins and In re Estate of Duane, "narrowly interpreting the word defendant make[ ]clear that removal was improper." (DE 19, 8). While the reasoning of those district court cases may be persuasive, they are not precedent binding on this court. See Va. Soc'y for Human Life, Inc. v. Fed. Election Comm'n, 263 F.3d 379, 394 (4th Cir. 2001) ("[D]ecisions in one circuit are not binding on district courts in another circuit."), overruled on other grounds Real Truth About Abortion, Inc. v. Fed. Election Comm'n, 681 F.3d 544, 550 n.2 (4th Cir. 2012). Moreover, the parties do not dispute that the facts in this case satisfy the requirements for federal diversity jurisdiction pursuant to 28 U.S.C. § 1332. Where the court and the parties find no binding Fourth Circuit precedent on the issue, identification of the defendant for purposes of removal in this action was not obvious, see In re Lowe, 102 F.3d at 733 n.2, and therefore, Falls III had an objectively reasonable basis for seeking removal. See Martin, 546 U.S. at 141. Accordingly, Goldman Sachs's motion for costs and attorney fees is denied. See id. at 136 ("[W]hen an objectively reasonable basis exists [for removal], fees should be denied.").

C. Transfer

Goldman Sachs requests that, following remand to the Wake County Clerk of Superior Court, this action be transferred to the Wake County Superior Court Division for adjudication of the creditor's claim. However, a federal district court lacking jurisdiction of a matter, as here, has no

13

general power to compel action by state officials or to enforce state law procedures. See Gurley v. Superior Court of Mecklenburg Cty., 411 F.2d 586, 587 (4th Cir. 1969); Bryan v. Nettles, 416 F. App'x 296, 297 (4th Cir. 2011) (denying request to transfer case to state court, because "a federal court lacks authority to transfer a case over which it lacks jurisdiction to state court"); see also Younger v. Harris, 401 U.S. 37, 44 (1971) (holding that absent extraordinary circumstances, federal courts are not authorized to interfere with pending state proceedings). Instead, North Carolina state law governs such procedures for cases within the superior court. See N.G. Gen. Stat. § 7A-258(b) ("A motion to transfer is filed in the action or proceeding sought to be transferred, but it is heard and determined by a judge of the superior court division whether the case is pending in that division or not."). Accordingly, Goldman Sachs's motion is denied with respect to transfer to the Wake County Superior Court Division.

## CONCLUSION

Based upon the foregoing, Goldman Sachs's motion is GRANTED with respect to remand to the Wake County Clerk of Superior Court, DENIED with respect to attorney fees and costs, and DENIED with respect to transfer to the Wake County Superior Court Division. (DE 18). This matter is hereby REMANDED to the Estates Division of the Wake County Clerk of Superior Court, for further proceedings. The clerk is DIRECTED to deliver a certified copy of this court's order, together with a copy of the court's final judgment, via U.S. Mail to the Wake County Clerk of Superior Court and then CLOSE this case.

SO ORDERED, this the 15th day of July, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge

14